[No. 15671.   Department One.   January 25, 1921.]

JANE H. JOHNSON et al., Appellants, v. BURNS LYMAN
SMITH, Respondent.[1]

NEGLIGENCE (6, 38)—CARE AS TO LICENSEES—ENTRANCE TO BUILD-
ING—EVIDENCE—SUFFICIENCY.   It cannot be said as a matter of
law that the proximity and similarity of a stairway door and of
entrance doors of a large office building were not calculated to mis-
lead and deceive one who attempted to enter the building and fell
down the stairway, which commenced but two to four inches from
the stairway door, which was mistaken for the entrance door.

SAME (39)—CONTRIBUTORY NEGLIGENCE OF INVITEE.   In such a
case it cannot be said, as a matter of law, that one is guilty of
contributory negligence in falling down the stairs, where the first
step through the door would land one not on a platform but on
the descending stairs.

Appeal from a judgment of the superior court for
King county, Reynolds, J., entered November 7, 1919,
dismissing an action for personal injuries, notwith-
standing the verdict of a jury rendered in favor of the
plaintiff.   Reversed.

*Vince H. Faben,* for appellant.
*Earl G. Rice* and *Lloyd R. Savage,* for respondent.

BRIDGES, J.—Suit for personal injuries.   There was a
verdict for the plaintiff in the sum of four thousand
dollars.   Before entry of judgment thereon, the defend-
ant's motion for judgment notwithstanding the verdict
was granted, and judgment was entered dismissing the
action.   The plaintiff has appealed from this judg-
ment.

The L. C. Smith 42-story building is located at the
northeasterly corner of Second avenue and Yesler way,
in Seattle.   Near the center of the Second avenue side
of the building, are two large stone or marble columns,

[1]Reported in 194 Pac. 997.

extending flush with the sidewalk. The evidence does not show the distance between these columns, but, judging from the maps and pictures, it must be some eighteen or twenty feet. The main Second avenue entrance to the building is between these two columns. Standing on the sidewalk and looking east at this portion of the building, one will see four storm doors commencing at or near the north stone or marble column, and extending about two-thirds of the way to the southerly column. Next to the south of these four doors is a casement or window the lower half of which is of wood or metal and the upper half of which is of glass. This window is about two feet in width and somewhat narrower than the doors. Immediately south of the window is another storm door. All of these doors were made in the same manner and one looked substantially like another. Above all the doors, as well as the stairway window, were large glass windows. This whole entrance was constructed mostly of glass with a view of letting in as much light as possible. The four doors immediately to the north of the window lead directly into the vestibule which takes one to the elevators. The window looks into a part of a stairway leading from the sidewalk to the basement, and the south door opens upon this stairway. All of these doors and the windows are on a line and are set back from the sidewalk some two feet. Near the bottom of the stairway is a stone platform at the end of which is a door leading into the basement of the building. On the doors entering the corridor, the word "Pull" is painted in plain letters; on the door leading into the stairway there is no inscription. At all times prior to the injury sued for, it had been customary to leave unlocked the door leading from the sidewalk to the stairway, but to keep locked the door at the bottom of the stairway.

The basement was used exclusively for paint shops, carpenter shops and other similar uses made by the owner of the building. On either side of the entrance thus described, are stores having windows and doors on Second avenue.

Relative to the injury and the manner in which it occurred, there was testimony to go to the jury showing the following facts: The appellant, a few minutes before noon of the 7th day of December, 1918, took a street car at some point on Second avenue, north of the Smith building, with the view of coming to that building for the purpose of transacting certain business with one of the tenants who occupied rooms on the upper floors. The street car stopped practically in front of the Smith building, which would be immediately before reaching Yesler way. The appellant left the car and walked around the front of it to the easterly sidewalk of Second avenue, and thence northerly on the sidewalk for a short distance, and when she reached the most southerly door which we have heretofore described, she opened it and fell headlong to the bottom of the stairway and was severely injured. When she opened this door, she thought she was opening one of the doors leading into the main vestibule. The edge of the first rise of the stairway is but two to four inches inside of this door—in other words, the descent of the stairway starts almost immediately from the door. The day was bright and the vestibule and stairway were reasonably light.

The chief questions are whether the appellant was guilty of negligence, as a matter of law, in mistaking the stairway door for a part of the entrance into the main corridor, and whether there was sufficient testimony to take the case to the jury on the question whether respondent was negligent in maintaining the

unlocked stairway door. Such are the facts here that probably an answer to the first question would be an answer to the second.

It is fundamental that all persons having occasion to enter a building of this character on legitimate business have an implied invitation from the owner of the building for that purpose, and such owner owes a duty to all such persons, which carries with it the obligation to exercise reasonable care and prudence to provide a reasonably safe and suitable entrance, and that such entrance and the approach thereto must be so constructed and maintained that visitors will not be liable to step into dangerous pitfalls by reason of misleading doors or deceptive landings. *Foren v. Rodick,* 90 Me. 276, 38 Atl. 175, and cases there cited.

It seems to us that appellant, in entering the stairway door, might well, under the facts shown in this case, have mistaken that door for the main entrance to the corridor. As we have shown, this door is almost identical with the main corridor doors, and there was practically nothing to indicate that it was not a part of the corridor doors, except the narrow window between it and those doors. It is not for us to decide whether the respondent was guilty of negligence in maintaining these doors as it did or whether the appellant was guilty of negligence in mistaking the door as she did. It is only for us to determine whether there was evidence sufficient to go to the jury on these questions, and we feel confident that there was such.

Most of the cases relied on by the respondent and which, it is asserted in the briefs, influenced the lower court to its action are cases where persons have fallen into stairways located in storerooms or depots. Such is the case of *Dunn v. Kemp & Hebert,* 36 Wash. 183, 78 Pac. 782. There we held that a customer who fell

down a well lighted stairway located in a storeroom, and which stairway was protected on all sides except the entrance, was guilty of negligence and could not recover. To the same general effect are the following cases: *Lehman v. Amsterdam Coffee Co.*, 146 Wis. 213, 131 N. W. 362; *Johnson v. Ramberg*, 49 Minn. 341, 51 N. W. 1043; *Accousi v. Stowers Furniture Co.*, 87 S. W. (Tex. Civ. App.) 861.

In the case of *McNaughton v. Illinois Cent. R. Co.*, 136 Iowa 177, 113 N. W. 844, the facts were that in defendant's depot there were, among others, two doors, one labeled "Basement" and the other labeled "Toilet." The plaintiff mistakenly opened the basement door, thinking she was opening the door to the toilet, and fell down the stairway and was injured. It was held that she could not recover.

In the case of *Illinois Cent. R. Co. v. Sanderson*, 175 Ky. 11, 192 S. W. 869, L. R. A. 1917 D 890, it was held that a person who, without looking, pushed through a door partly open, into a dark hallway leading to the basement of the depot, thinking it a door to the toilet, and fell and was injured was guilty of contributory negligence and could not recover. To the same effect are the cases of *Lehman v. Amsterdam Coffee Co.*, *supra*; *Speck v. Northern Pac. R. Co.*, 108 Minn. 435, 122 N. W. 497, 24 L. R. A. 249, cited by respondent.

The respondent also relies on the case of *Hollenbeck v. Clemmer*, 66 Wash. 565, 119 Pac. 1114, 37 L. R. A. (N. S.) 698, 2 N. C. C. A. 530. There we held that the mere fact that one step down is maintained at a side exit of a moving picture theatre is no evidence of negligence, where the exit was properly lighted.

But with relation to the storeroom stairway cases, this court has denied recovery only where the stairway was in such plain view of the injured person as, had he

paid but the slightest attention, he must have seen it. We have permitted recovery in all cases where the stairway was dangerously located or was unprotected or was poorly lighted, or tended to form a trap. *Stone v. Smith-Premier Typewriter Co.,* 48 Wash. 204, 93 Pac. 209; *Emmons v. Charlton & Co.,* 63 Wash. 276, 115 Pac. 163; *Driscoll v. Devenere,* 110 Wash. 307, 188 Pac. 408.

It seems to us, however, that there is a clear distinction between cases relied on by respondent and the facts of this case. It is quite usual, if not necessary, for there to be stairways in large storerooms which either lead to a higher floor or to the basement, and if such stairways are properly lighted and are not placed in peculiarly dangerous locations and are in plain view, it should be held that there is no negligence in maintaining them. All persons must realize that such stairways exist and they cannot blindly go into them and then seek recovery. So, also, in the depot cases cited by respondent. In all the main waiting rooms there must necessarily be many doors, and, usually, among the rest, one leading to the basement. Of this fact all persons must take notice and they have no right to assume that they will be perfectly safe in entering any of such doors.

But in this case we find an entirely different situation. Here the door which the appellant mistook for the main corridor doors, to all intents and purposes, looked like those doors. The very resemblance of the doors and their proximity, were calculated to mislead and in this instance did actually mislead. Had the stairway door been at some considerable distance from the entrance doors, we would have a very different situation and case. But it was separated from those doors only by a two foot window, which itself had consider-

able resemblance to the doors. Under these circumstances it cannot be said, as a matter of law, that the situation was not calculated to mislead or deceive.

In our opinion, this case is controlled by the principles of law laid down in the case of *Clopp v. Mear*, 134 Pa. St. 203, 19 Atl. 504. The facts there were that a certain store had two entrances, the doors of either of which were practically the same. Between these two doors or entrances was a show window. Within the storeroom, immediately in front of the southerly entrance, was a hoist which, at the time, was open. When it was closed, it was flush with the floor. The northerly door was intended for an entrance by customers. The southerly door was intended to be used only by persons connected with the store and was generally kept locked, but at the time in question it was unlocked. The plaintiff in the case, seeing something in the show window she desired to purchase, opened the southerly door and at once stepped into the hole in the floor. The court held that she was entitled to recover. In fact, the case was so clear to the judge writing the opinion that he said:

"In view of the evidence, this was not only a clear case for submission to the jury, but it was scarcely possible for them to come to any other conclusion than that the defendants were chargeable with negligence in leaving the hatchway open and unguarded and thereby causing the serious injury that was sustained by the plaintiff."

Another case closely resembling the one at bar is *Foren v. Rodick, supra,* where the facts were as follows: the building in question had a first and second story; the first floor was devoted entirely to business enterprises and was divided into several stores, and the second floor was leased for offices. The court, in its opinion, stated the remainder of the facts as follows:

"The main entrance to the stairway leading to the second floor is from Cottage street, about midway of the length of the building. It is about four feet in width, and is closed by double doors opening inward to a short landing at the foot of the staircase. Twenty-two and one-half inches at the left of these doors, as one faces the building, and at the same height from the sidewalk, is a single door opening from the sidewalk inward to the cellar."

The plaintiff, desiring to go to the second floor of the building, mistook the cellar doorway for the main entrance and was injured. The court held that the defendant was negligent in maintaining this cellar door unlocked in such close proximity to the main entrance to the stairway, and that the plaintiff was not negligent in mistaking it for the stairway door.

In the case of *Gordon v. Cummins,* 152 Mass. 513, 25 N. E. 978, 23 Am. St. 846, 9 L. R. A. 640, the facts were that the plaintiff was injured by falling into an elevator well which communicated directly with the street by an opening provided with a sliding door and chain which guarded it. Separated from the opening by a granite post a foot wide, was an open doorway of about the same size and construction and on the same level with the street, which led to the common entry of the building. At the time of the accident, the elevator opening was not protected by the chain and the plaintiff mistook it for the open doorway. The court said that the plaintiff "had a right to suppose that, when seeking to enter where he had a right to go, he would not be exposed to this danger, and that an entrance by its side, easily to be mistaken for it, would not be left open and uninclosed by any barrier at a time when it was not in use."

In the case of *Hayward v. Merrill,* 94 Ill. 349, 34 Am. Rep. 229, the facts were as follows: the plaintiff was a

guest of a certain hotel and had been assigned to room No. 38. Adjoining that room on the same side of the hall, was a door which resembled the door of his room, only two and one-half feet distant and connected with the elevator well. The doors of the plaintiff's room and of the elevator were numbered 38 and 40, respectively. The plaintiff, thinking he was entering his room, opened the door to the elevator well and, stepping in, fell to the basement. The plaintiff was permitted to recover. The court said:

"The proprietor of a hotel to which he invites the public to come, that he may make gains thereby, has no right to permit the existence of such an opening as this one was, unless suitably guarded, that the slightest mistake on the part of the guest might not prove fatal. Had the plaintiff been intent on observing the number on the room door he might have discovered the room he wished to enter, but by the merest accident he opened the next door, and this slight inattention was the cause of his severe injuries. The opening ought to have been better protected than it was."

It cannot be said, as a matter of law, that the appellant was guilty of negligence in mistaking the stairway door for one of the doors leading into the main corridor, and from this conclusion it must follow that we cannot say, as a matter of law, that the respondent was not guilty of negligence in maintaining this door in the manner it did.

The only other question to be considered is whether the appellant was guilty of such contributory negligence, after having mistaken the entrance door, as to bar recovery by her. The testimony shows that the starting of the stairway is practically flush with the door; that is, the first step through the door would land one, not on a platform, but on the descending stairs. The appellant testified that as soon as she opened the door she stepped in and immediately fell, and that she

had no opportunity, after stepping in, of looking about her and to see the stairway in front of her. Had there been a landing inside the door upon which the appellant would have stepped prior to starting down the stairs, then it might be held that she would have been guilty of negligence in not seeing the conditions in front of her; but, under her testimony, she had no opportunity to observe, and therefore she cannot be said to be guilty of negligence as a matter of law for not having observed the stairway. There was ample testimony on this question to require the case to be submitted to the jury.

Our conclusion, therefore, is that the court erred in granting judgment of dismissal notwithstanding the verdict.

The court, having granted the motion for judgment notwithstanding the verdict, did not make any ruling on respondent's motion for a new trial. The case is reversed and remanded with directions to set aside the judgment notwithstanding the verdict and to consider and act upon the motion for a new trial.

PARKER, C. J., MACKINTOSH, FULLERTON, and HOLCOMB, JJ., concur.