[No. 25469.   Department One.   June 17, 1935.]

LEONARD BALL, *a Minor, by Ira Ball, his Guardian ad Litem, Appellant,* v. PACIFIC COAST RAILROAD COMPANY, *Respondent.*[1]

*Lawrence Seltzer,* for appellant.

*Stratton & Kane,* for respondent.

[1]Reported in 46 P. (2d) 391.

TOLMAN, J.—This is an action brought by an infant, represented by his father as guardian *ad litem*, to recover for personal injuries sustained while playing upon a railway turntable, under the attractive nuisance doctrine, and for medical and hospital expenses incurred and to be incurred in his treatment.

The trial court rejected evidence as to the cost of the treatment upon the theory that the father only had a right of action therefor and, upon the conclusion of the plaintiff's case, sustained a motion for nonsuit, which was based upon the two-fold theory of contributory negligence and that the attractive nuisance doctrine could not apply because the child went upon the turntable not for the reason that it was attractive to him, but because he was invited to do so by a stranger of mature years. The plaintiff, appealing from the judgment of dismissal, assigns error upon both of these rulings.

The complaint contains an allegation as to the expenses for treatment and clearly seeks recovery therefor. This feature of the complaint was answered by a general denial, and, so far as the record shows, no other defense thereto was offered, nor was the right to recover such expenses in this action in any way challenged until evidence upon the subject was offered in the course of the trial.

Undoubtedly, in such cases the right of action is vested in the father, who is primarily liable for the child's necessities, but such a chose in action is assignable like any other chose in action, and the person liable is not vitally concerned with the question of who should prosecute the action, provided the judgment, when entered, will be a complete bar and will protect him against suit by another upon the same cause of action.

This exact question was before this court in *Donald*

*v. Ballard,* 34 Wash. 576, 76 Pac. 80, and it was there clearly held that, by such an action, the father emancipated the son in so far as such damages were concerned and was himself estopped as to his own cause of action.

Since the question was not raised in a timely manner, it was error to reject the offered testimony.

The principal question raised by the ruling on the motion for nonsuit requires a consideration of the evidence which the appellant had placed before the jury.

There was ample evidence regarding the construction, condition and location of the turntable here involved, and that children had resorted to it for amusement for a long period of time prior to the accident, so as to bring it within the attractive nuisance rule. There is no contention to the contrary.

Respondent's position below and here was and is based wholly upon the supposed contributory negligence of the child, who was but seven years old at the time of the accident, and upon the theory that the child went to play upon the turntable because of the invitation of a stranger, and not because the turntable was attractive to him in and of itself.

Little need be said upon the question of the contributory negligence of a child only seven years of age. We can scarcely imagine a case involving a child of such tender years which would justify a court in holding him guilty of contributory negligence as a matter of law. The trial court did not seem to rely on that feature in granting the nonsuit, and, without setting forth the testimony in detail, we are content to say that the case as made by the plaintiff did not establish contributory negligence as a matter of law.

The evidence clearly indicates that the child had played on the turntable before the day of the accident and was therefore familiar with those features of it

which might make it attractive to him. The injured child and his sister, ten years of age, were together on the day of the accident. A number of other children were playing on the turntable, but seemingly had trouble in turning it rapidly enough to satisfy them. Two of the boys, seeing a man at a little distance, went to him and asked him to push upon the sweeps and cause the table to revolve for the amusement of the crowd of fifteen or twenty children there assembled at play. He consented, went to the turntable, and proceeded to do as requested. Little Leonard and his sister followed the man to the turntable, observed the table in operation, and asked the man to let them on. He stopped the moving table, let them go upon it and again applied his strength, causing the table to revolve more rapidly than the children could by their unaided strength. The sister testified on cross-examination:

"Q. Did Leonard Crosser tell you to get on there? A. No. When he went down, we went down there, and he started to push the turntable around, so we could ride on it. Q. He was pushing it when you came down? A. Yes. Q. You asked him to get on and he stopped it and let you get on and he pushed, is that right? A. Yes. . . . Q. Do you know how long Leonard Crosser had been turning this turntable before you came down? A. No, sir, I do not. Q. Did he stop it and tell you to get on and then he turned it around? A. Yes. . . . Q. I understood you to say when you came down to the turntable that Leonard Crosser was then turning it, is that correct? A. Yes. Q. Did you ask him to get on or did he tell you to get on? A. We asked him. Q. Then you got on? A. Yes. Q. And he turned,—how many times did he turn it around before the accident happened? A. About five times. Q. Was he the only one that was pushing the turntable around? A. Yes."

The injured boy testified that he had played on the turntable before the day of the accident, described the situation and told what there occurred. He testified

that he liked to play on the turntable, and that the other children urged him to so play at that time, and that he enjoyed doing so. On cross-examination, the following occurred:

"Q. The reason you got on the turntable was because this man was turning it, wasn't it? A. Yes. . . . Q. Do you remember those two kids coming up there and saying they could not push the turntable? A. Yes. Q. They told Mr. Crosser to come down and push the turntable for them? A. Yes. Q. He said 'okeh,' or what did he say? A. He said he would go. Q. He ran down, didn't he? A. No, he walked behind the rest. Q. Then Mr. Crosser walked down toward the turntable? A. Yes, he walked. Q. You did not walk with him, did you? A. Oh, no, I ran. Q. Was the turntable in motion when you got down there? A. Yes. Q. And he stopped it, did he? A. He stopped it, and we came up. Lucile hollered to him and then he stopped it. Q. Lucile hollered to him and he stopped it? A. Yes. Q. And you got on and he started up again, is that right? A. Yes. Q. How many times did he turn it around before you got your leg caught? A. I don't know just how many. Q. Several times, wasn't it? A. Yes. Q. Would you say five or six times? A. Uh huh."

Upon motion for a nonsuit, the evidence must be viewed in the light most favorable to the plaintiff; and with that rule in mind, we cannot say that the jury, in considering the testimony we have quoted, in the light of all of the other facts and circumstances shown in the case, might not, as reasonable men, have concluded that the child went to the place of danger solely because of the attractiveness of that place and not because of the invitation of the stranger, if there was any such invitation.

But even if the attractiveness of the turntable was not the sole cause, and if there was an invitation by the stranger which, combined with the attractiveness of the dangerous machinery, induced the child to place

himself in danger, still it would seem there would be a question for the jury. *Gulf, C. & S. F. R. Co. v. McWhirter,* 77 Tex. 356, 14 S. W. 26, 19 Am. St. 755. This case is cited and discussed in 36 A. L. R. 146, and its holding upon this point is summarized in these words:

"If a turntable or like dangerous machinery, such as is likely to attract children to it for purposes of amusement, be left unsecured, this is negligence on the part of its owner; and if while in this condition it be put in motion by one of sufficient intelligence to make his act negligence, then both parties ought to be held liable for their concurrent negligence through which one not guilty of contributory negligence is injured."

For the reasons indicated, the judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.

MILLARD, C. J., MAIN, and GERAGHTY, JJ., concur.

BEALS, J. (concurring) — The foregoing opinion meets with my hearty concurrence, save in so far as it intimates that the defendant (respondent here) might, at some stage of the proceedings, have successfully urged an objection to that portion of the complaint alleging the cost of hospital and medical services rendered for the minor. In my opinion, by including these allegations in the complaint, the father, who was also suing as guardian *ad litem* of his son, effected an equitable assignment to his son of any claim which he might have had, and stated a cause of action based upon the charges for the services referred to, which was not vulnerable to any objection which the defendant might have urged at any stage of the proceeding.

In such a case, while the father is primarily liable for services rendered to his minor son, the minor is also liable, and his estate, if he has one, would be held to respond to one rendering medical or hospital ser-

vices, if payment could not be enforced against the parent.

Multiplicity of actions is to be avoided, and, in my opinion, the practice here followed is to be commended in cases where the responsible parent sues as guardian. I accordingly concur in the opinion, save as herein set forth.