[No. 26738. Department Two. December 28, 1937.]
MIKE KEDZIORA *et al., Appellants,* v. THE WASHINGTON
WATER POWER COMPANY, *Respondent.*[1]

*G. M. Ferris* and *Wernette & Crowley,* for appellants.

*Post, Russell, Davis & Paine,* for respondent.

BEALS, J.—Mike and Lottie Kedziora brought this action for the purpose of recovering damages on account of the death of their minor son, John Kedziora, who was killed by an electric shock received from a

[1]Reported in 74 P. (2d) 898.

power line owned and operated by defendant, The Washington Water Power Company.

John Kedziora, a lad eleven years of age, on the afternoon of March 19, 1934, was flying his kite in a tract of vacant land to the south of Thirty-seventh avenue, an unpaved road, in the suburbs of the city of Spokane. The district was rather sparsely settled. John and his friend, Teddy Carl, were flying the former's kite, to which was attached from one to two hundred feet of cotton string. In order to allow the kite more extended range after all their string had been placed in use, John had attached to the string a fine copper wire, two or three hundred feet in length. After the boys had been flying their kite for some time, they were joined by two little girls, about eight years of age, referred to in the testimony as the Peterson twins. In the course of the children's play, one of the girls broke the wire, and the kite came to the ground at some distance from the children, about forty feet to the north and on the other side of a power line maintained by defendant along Thirty-seventh avenue.

The kite line came to rest across the power wire, and when the children finished their play, the boys separated and John went in search of his kite. Shortly thereafter, there was a flash and a loud noise, and upon investigation, John's body was found thirty-five or forty feet north of the power line, the kite resting on the ground about twenty feet from the body in the direction of the power line. Some of the line which had held the kite was lying, as a witness said, "rather tangled," beside the body. It is probable that the boy had started to pull in the kite line, and, the ground being wet, a circuit had been established, with the result that he had received a shock sufficiently severe to

cause instant death. His body was badly burned, but there were no burns upon his hands.

Plaintiffs contended that the defendant had been negligent, in that it maintained its electric wires, carrying approximately sixty thousand volts, on poles bearing no signs or danger signals giving warning of the fact that the wires were carrying a high voltage. It is also contended that children had for some time been accustomed to fly their kites in the vicinity of these power lines, and that the company had notice of this fact, and should have taken some steps to give warning of the serious injury which might result from contact with the wires. It appeared that the defendant maintained another high power line on Twenty-ninth avenue, a few blocks north of Thirty-seventh avenue, and that the poles carrying these wires were marked "Danger—High Voltage."

Defendant denied all negligence on its part, and pleaded that the lad's death was caused through his own carelessness and negligence, or through the fault and negligence of plaintiffs. The action was tried to a jury, and resulted in a verdict in plaintiff's favor in the sum of $775. The defendant moved for judgment in its favor notwithstanding the verdict, and plaintiffs moved for a new trial. The court granted defendant's motion, and refused to grant plaintiffs a new trial. From a judgment entered in defendant's favor notwithstanding the verdict, plaintiffs have appealed.

Error is assigned upon the order of the court granting respondent's motion for judgment, and upon the entry of judgment in respondent's favor; also upon the denial of appellants' motion for a new trial.

Appellants rely upon the well established rule that a judgment notwithstanding the verdict of a jury involves no element of discretion, and may be granted only when there is neither evidence nor reasonable in-

ferences from evidence sustaining the verdict. *Brown
v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166.

Appellants also invoke the rule laid down in the
case of *Buttnick v. J. & M., Inc.,* 186 Wash. 658, 59
P. (2d) 750, in which we said:

"A challenge to the sufficiency of the evidence or a
motion for nonsuit admits the truth of plaintiff's evi-
dence and all inferences that can reasonably be drawn
therefrom, and requires that the evidence be inter-
preted most strongly against the defendant, or in the
light most favorable to the plaintiff. *Weinman v.
Puget Sound Power & Light Co.,* 175 Wash. 73, 26 P.
(2d) 395; *Ball v. Pacific Coast R. Co.,* 182 Wash. 221,
225, 46 P. (2d) 391."

It appears that respondent demurred to appellants'
complaint, and that the demurrer was argued before
the same judge who later presided over the trial, the
court, after argument, entering its order overruling
the demurrer. In passing upon the demurrer, the
court stated that the same would have been sustained
but for the allegation that children flew kites in the
vicinity of the power lines with the knowledge of re-
spondent.

On the day following the accident, a Spokane daily
paper carried a warning to kite-fliers, in the form of a
statement by respondent's safety engineer. The notice
called attention to the self-evident truth that the use
of wire in flying kites is extremely dangerous, and also
stated that certain atmospheric conditions might cause
even a string to transmit an electric charge.

Kite-flying is a favorite springtime sport, and it ap-
pears that it was extensively indulged in in the neigh-
borhood of respondent's lines. Appellants argue that
respondent was negligent in not placing warnings
upon its poles, and that it should have published
notices in the newspapers, and sent notices to the
schools, warning parents and children of the danger of

making contact with the power wires. One of respondent's employees testified that, when the poles were originally placed along Thirty-seventh avenue, a notice, "Danger—High Voltage," or words of similar import, was painted on the poles, but that the words had been largely obliterated when the poles were repainted.

Appellants cite the case of *Clark v. Longview Public Service Co.*, 143 Wash. 319, 255 Pac. 380, in which a judgment in favor of an eighteen year old girl, based upon injuries which she received as the result of her hair blowing against some high voltage wires used in connection with a pump house and transformer, was affirmed. It was held that the defendant must have known that great numbers of persons, young and old, were in the habit of congregating near the pump house, and should have reasonably anticipated that young persons might enter the enclosure through holes in the wire fence and be injured by the high voltage wires within the enclosure. The court held that the question of whether or not the owner of the pump house was negligent constituted a question for the jury. There were signs on two sides of the enclosure, warning passersby of danger, but there was no warning sign on the side where the plaintiff entered.

Appellant also relies upon the case of *Talkington v. Washington Water Power Co.*, 96 Wash. 386, 165 Pac. 87, and upon the case of *Znidersich v. Minnesota Utilities Co.*, 155 Minn. 293, 193 N. W. 449. In the case last cited, the supreme court of Minnesota upheld a recovery in favor of a boy who, for the purpose of recovering his kite, climbed a pole bearing a power wire, and was injured as a result of coming in contact with heavily charged and uninsulated wires. The court observed that there were no signs giving warning that

the pole was dangerous, the court holding that the facts brought the case within the rule

" . . . that one who keeps and maintains upon his premises dangerous instrumentalities or agencies likely to attract children of tender years in play, or permits such conditions to remain thereon with the knowledge that children are in the habit of resorting thereto for amusement and pastime, is liable to a child who is injured therefrom."

It appeared that the poles carrying the power wires stood on a public highway adjoining an unfenced tract of land, used by children as a playground, and that the poles were equipped with permanent contrivances serving the purpose of a ladder for climbing the same. As above noted, the court applied the attractive nuisance doctrine, and apparently based its decision largely upon that rule, which is inapplicable to the case at bar.

Appellants also argue that the exact cause of John's death was a question for the jury. Respondent contended in the court below that the wire which was attached to the kite string, when coming in contact with the power wire, made the circuit which caused John's death. Appellants argue that death did not necessarily result from contact of the kite wire with the power line; and that, under the evidence, the jury might have found that the kite string and not the wire carried the electric charge. It is, of course, impossible to determine from the evidence absolutely and beyond question exactly what the situation was at the moment the electric charge struck the boy. The evidence, as we view it, amounts to a practical demonstration that the boy had commenced to pull in his kite line, and that, when the wire which had been attached to the kite string passed over the power line, the fatal charge took effect, possibly through the wire and string, more probably through the wire alone.

Teddy Carl testified that there was attached to the kite "about 100 or 200 feet" of cotton string. The testimony indicates that the kite was lying on the ground, not less than twenty feet north of the power line. Appellants, then, assuming that there had been two hundred feet of string attached to the kite, argue that, when John first touched the string, the copper wire was not in contact with the power line. Teddy Carl estimated the length of string as from one to two hundred feet, and appellants make much of the following question propounded to him, and the lad's answer thereto:

"Q. At the time when that kite settled down over the high-tension power line, Ted, can you tell the jury as to whether or not the part that was laying on part of the high-tension line, whether that was the copper wire or whether that was part of the cord?  A. I would judge it would be part of the cord."

The witness also testified that, in his opinion, the kite lay on the ground about forty feet beyond the power line. Evidently, the witness was merely guessing when he testified that he "would judge" that the string and not the wire rested on the power line. It is difficult to understand from his evidence concerning the matter, he having stated that he and John separated at some distance from the scene of the accident, how the boy could even make a guess as to whether the string or wire rested on the respondent's line. The witness Sharp, who was the second person to reach John's body after the flash, testified that he saw plenty of string "rather tangled, all over the ground, right there where he was lying." Evidently, then, John had pulled in some of the kite line prior to the instant his body received the fatal charge.

Before respondent can be held liable in this action, the evidence must show that it had been guilty of some

negligence which proximately resulted in the death of appellants' son. Power lines are necessary incidents to modern life. They are dangerous agencies, and, like a railroad track, their very presence suggests the idea of danger. It is not contended that there was any fault in the construction of the line, appellants merely contending that the poles should have borne warning signs, and that it should be held that respondent had notice that children were in the habit of flying kites in the vicinity, and should have taken some steps to disseminate warnings that contact between even a string and the wires might result in injury to a kite-flier. In the absence of actual knowledge that children were using wire as kite lines, it would seem that it would not occur to anyone that wire would be put to such a use. While it is possible that on a rainy day a wet string might serve as an electric conductor, that is a rather improbable possibility, but the use of wire is manifestly dangerous.

Careful study of the evidence convinces us that respondent cannot be charged with actionable negligence for failing to take steps to give notice of danger to kite-fliers, assuming that it knew, or should have known, that children were flying kites in the vicinity. Respondent's duty was nowise increased or in any manner changed by this knowledge.

Teddy Carl testified that "we knew they [referring to the wires] would not be up there unless there was electricity running through." The boys were flying the kite a considerable distance from the power line. They had no reason to expect that their kite or kite line would come in contact with the power line, nor would it have done so but for the act of one of the little girls in breaking the line. Had a third party walked by and touched the kite line as it rested across the power wire, could it be contended that respondent

would be liable in damages to him, had he been injured by a shock? It is not contended that there was in existence any law or ordinance requiring respondent to place warning signs upon its poles. There are in evidence several lengths of the copper wire which was attached to the kite string, and a witness testified that one end of one strand of the wire shows evidence of the application of intense heat.

Negligence is never presumed; it must be proved by the party alleging it. *Wharton v. Warner,* 75 Wash. 470, 135 Pac. 235. Before a recovery may be had, it must also be proven that the negligence was the proximate cause of the injury. *Parmelee v. Chicago, M. & St. P. R. Co.,* 92 Wash. 185, 158 Pac. 977. It is also true that if, in law, a person has not been negligent, no act of another can render the first party guilty of negligence, and this whether the act of the other party be grossly negligent or negligent in lesser degree.

The case of *Kempf v. Spokane & Inland Empire R. Co.,* 82 Wash. 263, 144 Pac. 77, L. R. A. 1915C, 405, presents a striking analogy to the case at bar. It appeared that the defendant operated an electric railway which crossed Fifth avenue in the city of Spokane in a cut approximately thirty-five feet deep and forty-five feet wide at the top. The trolley wire was twenty-three feet above the track at the bottom of the cut. Boys were accustomed to play in the vicinity, and at times sat upon the edge of the cut, which was through solid rock, and watched the cars pass below them. On the day the plaintiff was hurt, he being then six or seven years of age, he with several other boys of the same age or a little older were playing in the vicinity. They had picked up some short pieces of wire, which they had fastened together so as to form a considerable length. In an attempt to get the wire across the cut, to simulate a telephone, the wire fell into the cut and

rested across the trolley line. Plaintiff, who was holding the wire, received a severe electric shock, causing the injuries for which he sued.

It was contended that the defendant had been negligent in failing to protect its trolley wire in such a manner that it would have been impossible for the wire which plaintiff was holding to have made contact with the trolley line. This court reversed a judgment entered upon the verdict of a jury in favor of the plaintiff and directed that the action be dismissed. In the course of its opinion, this court said:

"The question which is decisive of this case is whether the defendant was negligent in failing to guard or cover the trolley wire in some manner. The plaintiff claims that it was negligence on the part of the defendant to maintain a trolley wire carrying 6,600 volts of electricity 'within easy reach of the children that play on the bluff above the cut' through which this wire was strung. The degree of care required of one handling a dangerous agency, such as an electric current, varies in proportion to the attendant dangers. In other words, a person handling an agency which is attended with but slight danger must exercise a moderate degree of care, while, if the agency is attended with great danger, the care must be of the highest degree. *Card v. Wenatchee Valley Gas & Elec. Co.*, 77 Wash. 564, 137 Pac. 1047. A trolley wire charged with 6,600 volts of electric current would be an agency which is attended with great danger. In order to charge the defendant with liability, however, it is necessary that the injury which results from such dangerous agency be one which a person of ordinary prudence, in the light of the surrounding circumstances, would reasonably and naturally anticipate. *Johnston v. New Omaha Thomson-Houston Elec. Light Co.*, 78 Neb. 24, 110 N. W. 711, 17 L. R. A. (N. S.) 435; *Brush Elec. Light & Power Co. v. Lefevre*, 93 Tex. 604, 57 S. W. 640, 77 Am. St. 828, 49 L. R. A. 771.

"The rules of law just stated seem to be recognized by both parties. The question, then, is reduced to this: Was the injury which the Kempf boy sustained one

which the defendant should reasonably and naturally have anticipated as one likely to occur? After stating the facts in this case, it would seem that little need be said. It is very clear that a person of ordinary prudence, in the light of the surrounding facts and circumstances, would not reasonably and naturally have anticipated that a boy upon the edge of the cut would be injured by the trolley wire which was approximately 23 feet distant on a horizontal line from the edge of the cut, and 12 feet below. . . .

"In the present case, the trolley wire was where the defendant had a right to maintain it. An interference with it was an invasion of the right of the defendant. As already stated, there is no evidence that, prior to the time of the injury for which this suit was brought, the boys, in assembling in the vicinity to play, had in any manner entered upon any games which involved crossing or communicating across the cut. Had it been shown that it was customary for the boys of the neighborhood to indulge in games which involved either real or imaginary communication across the cut, and this fact was actually or constructively known to the defendant, a different question would be presented, upon which no opinion is now expressed. If the defendant were liable under the facts in this case, it would be equally liable if a boy upon the street should tie a stone to a wire and cast it over a trolley wire and be injured by the resulting shock. To hold the defendant liable for the injury which the boy upon the edge of the cut sustained, would make the liability of the defendant that of an insurer. This the law does not impose. In order to sustain the action, negligence must be shown."

The fact that it may be assumed that respondent knew that children were flying kites in the vicinity of its power line does not render the case last cited inapplicable to the facts of the case at bar. If the defendant in the case cited had known that children were in the habit of playing games which involved crossing or communicating across the cut, that information would have brought directly home to the

owner of the trolley line a particular dangerous situation, and the court, in deciding the case, naturally observed that no such state of facts was disclosed by the record. Notice of kite-flying in the neighborhood is an entirely different proposition, and does not so immediately suggest the element of danger. One flying a kite would naturally bend every effort to keep the kite and its line away from wires of all descriptions.

In the case of *Dilley v. Iowa Public Service Co.,* 210 Iowa 1332, 227 N. W. 173, it appeared that a boy nine years of age was killed when the kite which he was flying attached to a copper wire, came in contact with a power wire. The supreme court of Iowa held that the defendant was not liable, holding that no negligence on the part of the power company had been shown. In the course of its opinion, the court said:

"The accident resulted, not from any failure on the part of the defendant to meet all the statutory requirements of construction, but because the copper wire was carried up to it. Unless the company was already negligent in its manner of construction and maintenance, it did not become negligent by the mere act of another. The fact, if such, that such act was to some degree irresponsible, because of the tender years of the child, could have no influence upon the quality of the defendant's conduct. In such a case, the wrongful act of the injured party is to be deemed the proximate cause of his injury."

In the case of *Geroski v. Allegheny County Light Co.,* 247 Pa. 304, 93 Atl. 338, L. R. A. 1915D, 560, the supreme court of Pennsylvania held that a power company, maintaining wires carrying a heavy voltage twenty-nine feet above the surface of the ground and twelve feet from the wall of a building, was not liable for the death of the janitor of the building who, in hoisting a flag, using a copper wire as a halyard, permitted the copper wire to touch the power line, with

the result that he received a shock so severe as to cause his death.

In the case of *Callaway v. Central Georgia Power Co.*, 43 Ga. App. 820, 160 S. E. 703, it was held that a child playing in the street, who threw a spool with a wire attached over a power line twenty feet above the street, could not recover for injuries received.

A similar doctrine is announced in the cases of *Trout v. Philadelphia Electric Co.*, 236 Pa. 506, 84 Atl. 967, 42 L. R. A. (N. S.) 713; *Troidle v. Adirondack Power & Light Corp.*, 252 N. Y. 483, 169 N. E. 654; *Green v. West Penn. Rys. Co.*, 246 Pa. 340, 92 Atl. 341, L. R. A. 1915C, 151; and *Stanley v. Smithfield*, 211 N. C. 386, 190 S. E. 207.

In the case of *Salt River Valley Water Users' Ass'n v. Compton*, 39 Ariz. 491, 8 P. (2d) 249, it appeared that a boy climbed a high tension power line tower in a search for birds' nests, and was injured by coming in contact with the power wire. Among other charges of negligence, it was urged that the company was liable because it had failed to post danger or warning signs. The court held that the company was not liable, and in the course of its opinion said:

"But where an electric company maintains its wires at a height at which they would not come in dangerous proximity to such persons or things as it reasonably ought to anticipate might rightfully come under or near them, it is not chargeable with negligence because someone doing an act which it had no reason to expect suffers an injury which might not have been sustained if the wires had been safeguarded in a different manner from that in which they were. *Fairbairn v. American River Elec. Co.*, 170 Cal. 115, 148 Pac. 788; *Mayhew v. Yakima Power Co.*, 72 Wash. 431, 130 Pac. 485."

The case of *Texas Power & Light Co. v. Burt*, 104 S. W. (2d) (Tex. Civ. App.) 941, is to the same effect.

Under the authorities, we are clearly of the opinion that it cannot be held that respondent was guilty of negligence which proximately contributed to the unfortunate accident which is the subject matter of this lawsuit. Respondent's power line was apparently properly constructed. The boys were flying their kite at a considerable distance from the power line. Whether the stenciling of warning signs on the power poles would have operated in the least degree to prevent such an accident as this, seems extremely doubtful.

Appellants make much of the fact that, the day after the accident, a Spokane newspaper published an interview with respondent's safety engineer, warning the public at large of the danger of injury from the wires. In view of the injury which had happened, this was a very natural step to take, and nowise proves, or even indicates, that respondent had been negligent. It is not contended that any kite-flier had ever before been injured in the vicinity, as a result of his kite line coming in contact with power wires. An officer of the company testified that kites often became entangled in the wires, to the annoyance of the company, but it does not appear that any person had been injured as a result of such a happening.

The trial court did not err in granting judgment in respondent's favor notwithstanding the verdict in favor of appellants. Neither did the trial court err in overruling appellants' motion for a new trial.

The judgment appealed from is affirmed.

STEINERT, C. J., ROBINSON, BLAKE, and SIMPSON, JJ., concur.