[No. 26899. Department One. May 24, 1938.]

NELS HOLM, *Respondent*, v. THE INVESTMENT AND SE-
CURITIES COMPANY, *Defendant*, C. WESLEY
FIKE, *Appellant*.[1]

[1]Reported in 79 P. (2d) 708.

*Edge & Wilson* and *Roy C. Fox,* for appellant.

*Robertson & Smith,* for respondent.

HOLCOMB, J.—This action was instituted to recover damages for personal injuries sustained by respondent occasioned by his falling through the open door of an unguarded freight elevator shaft. The parties named as defendants appeared separately. A directed verdict resulted for the Investment and Securities Company, and a verdict and judgment was entered against C. Wesley Fike, who appeals from that judgment.

The Investment and Securities Company, a corporation, which will hereinafter be referred to as the "corporation," is the owner of the Fairmont hotel, a six story brick building constructed in 1906, situated on the south side of Riverside avenue between Washington street and Bernard street, in the city of Spokane. The lobby of this hotel is at the north end, fronts on Riverside avenue, and from it a passenger elevator

takes passengers to the various floors. Near the south end of the building is the freight elevator involved here. Only the houseman, the engineer, and the laundry man had authority to use this elevator.

The corporation leased all of the third, fourth, fifth and sixth floors of this building to appellant for a term commencing March 15, 1935, and expiring December 31, 1935. The lease was extended from time to time after its expiration for approximately six-month periods and was in effect under such extensions during the month of August, 1936. By the terms of this lease, the lessee agreed:

"To save the lessor harmless from all loss or damage, or claim of damage, on account of the condition of the premises."

Appellant carried on a general hotel business, renting rooms to the public by the day, week and month.

August 23, 1936, one Miss David was residing at room 421 in the Fairmont hotel, and had been living there for about a month. One Edward Frye visited Miss David at her hotel room on that afternoon, and at Frye's request Miss David telephoned respondent, told him Frye was visiting her, and invited him to come over to her room and bring a Mrs. Johnson. These four individuals had formerly resided at Potlatch, Idaho, where they had become acquainted. Respondent had come to Spokane in the middle of July, 1936.

Following the telephone conversation, respondent called for Mrs. Johnson, but she was not at home, and he walked to the Fairmont hotel, arriving there at about 6:30 p. m. He advised the elevator operator that he wanted to go to room 421, and after taking respondent to the fourth floor, the operator directed him to the room designated, which is situated at the

extreme southern end of the building, facing Sprague avenue.

There was in this room something less than half a pint of liquor, and upon respondent's arrival Frye invited him to have a drink. Respondent had one drink and left about seven o'clock to find Mrs. Johnson, agreeing to return about eight o'clock, when definite plans for the evening were to be made.

The freight elevator was about ten feet from the door of Miss David's room, and the stairway was about twenty feet away.

Respondent walked down the stairway, located on the southern end of the building, from the fourth to the third floor, and noticing from the head of the stairway on the third floor that the second floor was dark, he turned around, observed the freight elevator in question, and decided to avail himself of the egress afforded by it. This elevator was surrounded by an iron grill work, and had no sign upon it to indicate that it was a freight elevator.

On the day of the accident, the sun had set at 6:49 p. m. On the ceiling between the stairway and the elevator there was a light fixture. The testimony is not entirely in harmony in regard to the adequacy of the light at that time and place. Respondent testified that he could see no light burning on the third floor, and that it was "rather dark," "not completely dark," and "about half dark."

As to his departure from the building, respondent testified that he walked out of the room, took the first stairway he saw, walked down two short flights of stairs, saw the elevator, and was going to proceed down, but he looked down and it seemed it was rather dark on the next floor as far as he could see; he glanced over towards the elevator, happened to see that door open, and thought he might as well step into the ele-

vator as long as it was there. He went over to the elevator, and that is the last thing he remembered.

Respondent fell to the bottom of the freight elevator shaft, and there were no eye witnesses present. His cries attracted a police officer, who found him at the bottom of the shaft on the morning of August 24, between five and five-thirty a. m. From this fall, respondent alleges that he suffered extreme pain and severe injuries.

The complaint alleged that appellant had negligently failed to provide the entrance of the elevator with an automatic or self-closing gate, had negligently and carelessly permitted the elevator to be left open and the shaft to remain unguarded, and the hallway on the third floor was insufficiently lighted; that, by reason of this negligence, respondent fell into the shaft, thereby sustaining severe personal injuries; that, at the time of the injury, respondent was a strong, healthy and able-bodied man, employed as a lumber worker, earning and capable of earning a minimum of five dollars per day; and that respondent has been prevented from following his occupation, and will be prevented from performing any form of manual labor.

The corporation and appellant demurred to the complaint and the demurrers were overruled.

Appellant answered, admitting respondent fell into the elevator shaft, but denied the remaining material allegations of the complaint, and set up as an affirmative defense that, if respondent sustained any injuries or damages, the same were caused by his own negligence. Respondent replied denying the affirmative defense set forth in the answer.

At the conclusion of respondent's case, appellant challenged the sufficiency of the evidence to make a case for the jury, and moved the court to dismiss the action and enter judgment, as a matter of law, in his

favor. The corporation moved that judgment of dismissal, or, in the alternative, a nonsuit, be entered. Both of these motions were denied.

At the conclusion of all the evidence, the corporation challenged the sufficiency of the evidence to warrant the submission of the case to the jury with respect to it, and moved that the jury be instructed to return a verdict in its favor for several reasons. Appellant, at that time, also moved the court to enter judgment, as a matter of law, in his favor, or, in the alternative, to direct the jury to return a verdict in his favor; because no actionable negligence in regard to him was shown by the evidence, because the contributory negligence of respondent is sufficient to preclude his recovery, as a matter of law, and because the relationship of appellant, by reason of his contractual occupancy, is such as to relieve him of liability.

The motion of the corporation for a directed verdict was granted, and the motion of appellant was denied. Judgment was entered against appellant. Thereafter, motions for judgment n. o. v. and for a new trial were made and denied, and this appeal taken.

A number of assignments of error are presented for consideration.

The first three assignments of error relate to the sufficiency of the evidence to make a case for the jury. Such a challenge requires that the evidence be interpreted most strongly against appellant and in the light most favorable to respondent. *Ball v. Pacific Coast R. Co.*, 182 Wash. 221, 46 P. (2d) 391; *Buttnick v. J. & M., Inc.*, 186 Wash. 658, 59 P. (2d) 750.

The testimony shows that a number of people have stopped and waited at the freight elevator, expecting and believing it to be a passenger elevator.

Respondent testified on direct, relative to his en-

trance into the freight elevator, that he thought it was a passenger elevator; that it looked just like any other elevator he had seen; that it had a kind of a steel or wire cage around it; that there was nothing there to show that the elevator was not there; that he glanced down before he stepped and thought he saw the elevator there and the elevator floor; that he did not know how far the door opened, but it was open about four feet; that no part of his body touched either the door or the side of the elevator as he stepped in; and that he discovered after he stepped in that he stepped into space.

Appellant lays great stress upon the testimony of respondent in his deposition taken April 27, 1936, about one month before the trial, to the effect that he did not notice whether an elevator was on the third floor or not at the time of the accident. Respondent repudiated as incorrect any statement appearing in his deposition that was inconsistent with his thinking that he saw an elevator on the third floor at the time and place of the accident.

The evidence relating to the amount of artificial illumination in the vicinity of the stairway and elevator and the extent of respondent's intoxication is somewhat conflicting. The record discloses that the freight elevator was not equipped with automatic self-closing gates.

Appellant contends that respondent was a mere licensee and, by attempting to gain admission to a freight elevator not intended for the use of guests, departed from that part of the hotel to which guests and invitees are invited, and thereby became a trespasser.

An invitee is one who is either expressly or impliedly invited on to the premises of another. A licensee is one who occupies an intermediate position

between that of an invitee and a trespasser, and comes upon the premises without any invitation, express or implied. *Kinsman v. Barton & Co.*, 141 Wash. 311, 251 Pac. 563.

It is our settled rule that the owner of premises or the proprietor of a business establishment owes no duty to a mere licensee except to refrain from injuring such licensee wantonly or wilfully *(Buttnick v. J. & M., Inc., supra)*, whereas, with respect to an invitee, the premises must be made reasonably safe for his reception. *Alaska Pac. Steamship Co. v. Sperry Flour Co.*, 107 Wash. 545, 182 Pac. 634, 185 Pac. 583; *Kinsman v. Barton & Co., supra;* 3 Cooley on Torts (1932), 186, § 1407.

We have held that all persons having occasion to enter an office building for the purpose of transacting business with one of the tenants have an implied invitation from the owner of the building for that purpose, and such owner is obligated to exercise reasonable care with regard to them. *Johnson v. Smith,* 114 Wash. 311, 194 Pac. 997.

We consider that the owner or proprietor of a hotel likewise extends an implied invitation to guests specifically invited by tenants to come into the building, and therefore must extend to them the standard of care required for invitees.

In *McGinnis v. Keylon,* 135 Wash. 588, 238 Pac. 631, we held the owners of an apartment house are under a duty to keep halls and passageways reasonably safe for guests of a tenant of the building. If they are not safe without an artificial light, it is negligence on the part of the landlord not to maintain such a light.

The court properly instructed the jury that the proprietor of a hotel is not an insurer of safety of persons who use the hallways, but is only liable for his negligence, if any.

It is next urged that respondent was guilty of

such contributory negligence as to preclude his recovery as a matter of law, and that this question should not have been submitted to the jury.

The jury was instructed that, to allow recovery against appellant, it was necessary to find respondent fell from the third floor as alleged, and that the elevator door was left open, or permitted to remain in this condition, by appellant or his employees.

The jury was further instructed that darkness itself is a warning of danger, and that one is under a duty to exercise such care and caution as a reasonably prudent person would exercise under like circumstances.

We have examined the authorities cited by appellant and find most of them are distinguishable on their facts from the instant case. We recognize that different courts of last resort have reached different conclusions on questions of negligence and contributory negligence under similar facts.

Viewing the entire record, we are not prepared to say that respondent did not exercise such care as an ordinarily prudent man would have exercised under like circumstances. We are convinced that the question of claimed contributory negligence of respondent was properly left to the jury to determine from all of the evidence.

" 'This court has repeatedly held that generally the question of contributory negligence is for the jury, and that the court is rarely justified in withdrawing it from the jury; that, to justify the withdrawal of the case from the jury, the acts done must be so palpably negligent that there can be no two opinions concerning them in the minds of reasonable men.' " *Crumrine v. Grubb,* 165 Wash. 391, 5 P. (2d) 498.

See, also, *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993.

The credibility of the witnesses and the determina-

tion of the factual questions presented by the conflicting testimony were also for the jury.

The instructions relating to the standard of care required to be exercised by appellant were legally correct.

██ One untenable assignment of error complains of the eliciting of testimony from appellant over his counsel's objection to the effect that automatic self-closing doors were not installed in the freight elevator. In that connection, appellant directs attention to the fact that the certified copy of ordinance No. C-1891 of Spokane, passed in 1915, relating to buildings, structures, and fixtures, consisting of almost two hundred pages, had the corner of the page turned down on which appears § 332, requiring freight elevator shafts to be equipped with automatic self-closing gates; and that this copy of the ordinance was presented to the jury in this manner.

Counsel for the corporation offered this ordinance in evidence, and appellant did not object to its introduction. Hence, it could not now be claimed to be prejudicial error.

██ It is true that respondent alleged in his complaint that appellant was bound to observe ordinance C-1891 of Spokane, and §§ 332, 335, and 309, which were in force at the time of the accident; but during the trial counsel for respondent specifically stated he was not relying upon the failure to have automatic self-closing doors as required by the ordinance as negligence, but that he was relying upon the absence of such doors in so far as that fact might reflect a disregard of ordinary precaution.

Assuming, without deciding, that the instant freight elevator is not required to be equipped with automatic self-closing gates, independent of statutes or ordinance imposing such a duty, it was proper to submit to the

jury the question of whether it was negligently operated by reason of the absence of such equipment. *Atkeson v. Jackson Estate,* 72 Wash. 233, 130 Pac. 102.

The instruction given in regard to the automatic self-closing doors did not recite that a duty to install such equipment was imposed by law or municipal ordinance, but merely presented the question as to whether or not appellant exercised reasonable care with reference to respondent in view of the fact that the freight elevator was not so equipped. Neither the instruction relating to the automatic self-closing doors nor the eliciting of the testimony relative thereto constitute error.

■ Error is also predicated upon the denial of appellant's motion for a new trial. The grounds upon which a new trial is claimed are, in substance, a recapitulation of the assignments of error hereinbefore referred to, save that it is urged that, by the colloquy of counsel during the closing arguments, the jury was led to believe appellant was insured.

If the evidence had been introduced or comments made in the presence of the jury to the effect that appellant was protected by insurance, that might have been prejudicial if not stricken, but there is nothing in the record to show such comments were made in the closing arguments.

Finding no error in the record, the judgment is affirmed.

STEINERT, C. J., SIMPSON, GERAGHTY, and MAIN, JJ., concur.