[No. 10782.   Department One.   March 12, 1913.]

CLOYD MAYHEW, *Appellant*, v. YAKIMA POWER COMPANY, *Respondent*.[1]

ELECTRICITY—HIGH VOLTAGE WIRES—NEGLIGENCE—EVIDENCE—SUFFICIENCY.   Negligence in the maintenance of a high voltage power line along a county road, carried on cross-arms forty feet above the ground, is not shown from the fact that the line came in contact with a hay-loading derrick forty-five feet high, with a revolving arm, which was being hauled along the highway, where there was no evidence that it was usual or customary to haul such derricks along the highway.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered March 21, 1912, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action for personal injuries sustained through contact with electric wires on a highway.   Affirmed.

*J. M. Dunn* and *Frank A. Luse*, for appellant.

*Danson, Williams & Danson* and *Luhman & Clark* (*George D. Lantz*, of counsel), for respondent.

CHADWICK, J.—Defendant is the owner of a high power transmission line in the Yakima valley.   It runs parallel with and along the edge of the right-of-way of the public roads. The posts are set the usual distance apart, and the power line is run on cross-arms which are about forty feet above the ground.   The voltage was very heavy, and there is evidence to sustain a finding that insulation would have been impractical if not impossible.   Plaintiff, a boy of sixteen years, but well grown and strong, was employed as one of a hay stacking crew.   Hay is usually stacked in the Yakima valley by means of a derrick.   The one to which we shall refer was rigged in the following manner:   Large timbers were set on the ground, and upon these a stack pole forty-five feet high was reared.   On the top of the stack pole there was an arm

[1]Reported in 130 Pac. 485.

eighteen feet long.   The whole superstructure was so arranged that it would swing or revolve freely.   From the end of the arm, a long cable was extended through a block and tackle.   When this was pulled down it formed a loop which would reach to the ground.   The ground timbers of the derrick were cut to serve the purpose of sled runners, and the structure was moved by hitching horses to it and dragging it from place to place.

At the time of the injury complained of, the derrick was being hauled along the road, and plaintiff was riding in the loop of the cable, which hung so low that it came within a short distance of the ground.   The ground was sufficiently rough and uneven to jar the structure, and the mast swung around so that the wire cable came in contact with the power line, at a time when plaintiff had his foot on the ground.   A circuit was thus formed, and plaintiff was severely shocked and burned.   An action was brought to recover damages, and from a directed verdict plaintiff has appealed.

Negligence is alleged in this, that respondent having placed a dangerous force on the highway, it was his duty to make the highway as safe for those who had a right to travel on it as it was before.   He also invokes the rule that, where people have a right to go either for business or pleasure, it is the duty of those who handle dangerous agencies to insulate or protect them so as to insure the safety of those who might come in contact with them.   But it seems to us, as it did to the trial judge, that there was no negligence on the part of respondent.   Negligence is an omission of duty imposed by statute or implied by law.   Negligence is not presumed, but is to be proven as a fact.   Nor does the law charge as negligence an act which may result in harm to another, unless the consequences of the act are such as could have been reasonably foreseen and guarded against.   The duty of the respondent is accurately defined by the trial judge when taking the case from the jury.   He said:

"That duty was to put the wires high enough to leave the road safe, not for any and all travel, but for usual and ordinary travel."

In the course of his opinion he said:

"There is not any evidence, worthy evidence, tending to prove that at the time defendant built its power line hay derricks 45 feet high, including the projection of the arm above the mast, were so generally hauled over said road as to constitute ordinary and usual travel. There is evidence tending to prove that Mr. Mayhew had, as occasion required, hauled his derrick in question over the road, and that other derricks had occasionally been hauled over other roads in that part of the county, but the habit of Mr. Mayhew to haul his derrick is not a custom of the community to haul derricks and is not in my opinion, sufficient evidence upon which to submit to you the question of the existence of such a custom. There is no evidence that the other derricks occasionally hauled were 45 feet high, though there is perhaps some evidence tending to show that they were not that high. The evidence, in my opinion, not being sufficient to submit to the jury, the question whether derricks 45 feet high were so generally hauled over said road as to constitute usual and ordinary travel, the question arises: Ought the court judicially to know that derricks 45 feet high were so generally hauled over that road as to constitute usual and ordinary travel, or were so generally hauled over the roads in that vicinity as to constitute ordinary and usual travel thereon? It seems to me the court does not judicially know that fact, if it be a fact. Doubtless it is judicially known that common vehicles are ordinarily hauled on the highways. But it seems to me the court judicially knows that a derrick with a revolving arm 45 feet high is an extraordinarily high thing to haul on the highway, and while, as aforesaid, an extraordinarily high thing may be so generally hauled as to constitute ordinary travel, I do not think that derricks of the height and structure of the one in question are so generally hauled that the court judicially knows that such hauling is an ordinary use of the highway. If the court does judicially know it, it follows on elementary law that the court should so charge the jury. In my opinion, no lawyer will maintain that the court should charge the jury in this case that hauling derricks like the one in question was an ordinary use of said highway."

We can add nothing to this conclusion. It is elementary law and sustained by many adjudged cases. 15 Cyc. 471, 472; *Graves v. Washington Water Power Co.*, 44 Wash. 675, 87 Pac. 956, 11 L. R. A. (N. S.) 452.

Judgment affirmed.

CROW, C. J., GOSE, MOUNT, and PARKER, JJ., concur.