[No. 23659. Department Two. July 21, 1932.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK FIGLENSKI, *Appellant.*[1]

[1]Reported in 13 P. (2d) 5.

*Wilson C. Gresham,* for appellant.
*Ferd J. Schaaf,* for respondent.

MAIN, J. — The defendant, by information, was charged with the crime of unlawfully having in his possession, and carrying about with him, intoxicating liquor for the purpose of sale; to which he pleaded not guilty. The trial resulted in a verdict of guilty. The defendant made a motion in arrest of judgment, and, in the alternative, for a new trial, both of which were overruled; and from the judgment and sentence entered upon the verdict, he appeals.

The facts, as they appear from the evidence offered by the state, may be summarized as follows: One Wayne Wyrick was the manager of a store at Omak, in Okanogan county, this state. In the front part of the store, there were such articles for sale as are ordinarily found in a grocery store. In the rear, there were heavier articles, such as flour and feed in sacks. There was a partition across the store room separating the rear from the front. At the back of the store there was a door, as well as one at the front. The appellant, Frank Figlenski, and his family resided in the community and were customers of the store.

Two or three days prior to November 28, 1930, the appellant came to the store and made some purchases. During the time that he was there, he inquired of Wyrick whether he desired any intoxicating liquor, to which Wyrick replied that he did not, but stated that he knew of another party who desired some. Inquiry was made as to the quality of the liquor, and the appellant stated that it was first-class.

On the evening of November 28th, or two or three days after the conversation mentioned, the appellant again came to the store and made some purchases, which were loaded into his Ford coupe at the rear door. Prior to this and subsequent to the first conversation, Wyrick had received, from the party that he mentioned as desiring some liquor, ten dollars with which to pay for a gallon jug thereof. While the articles were being loaded into the Ford coupe, Wyrick gave to the appellant the ten dollars. Later in the evening, the party for whom the liquor was intended came to the store, went into the back room and got the one-gallon jug of moonshine whiskey which had been placed in the rear of the building not far from the back door and close to some sacks of flour and feed.

Wyrick's testimony is not clear as to whether he saw the appellant place the liquor there, but we shall assume that he did not actually see the appellant bring it into the storeroom and place it near the sacks of flour and feed. The appellant unequivocally denied all the material facts with reference to the intoxicating liquor. As stated, the trial resulted in a verdict of guilty.

It is first contended that the motion in arrest of judgment should have been sustained, because it is said that there is no proof that the appellant ever carried about with him, for the purpose of sale, intoxicating liquor, as charged in the information. From the

facts stated and as they appear in the evidence, it seems to us that the jury were amply warranted in drawing the inference that the appellant had brought the jug of moonshine whiskey to the store on the evening of November 28th and had placed it near the sacks of flour and feed. To hold, as a matter of law, that the facts were not sufficient to enable the jury to draw the inference that the appellant was guilty, would be too great a tax upon credulity.

In the cases of *State v. Gumm,* 141 Wash. 355, 251 Pac. 273, and *State v. Rondeau,* 148 Wash. 402, 269 Pac. 3, the facts were less persuasive of guilt than they are in the case now before us, and in each of those cases it was held that whether the defendant was guilty of the bootlegging charge, was a question for the jury. The case of *State v. Hurlbert,* 153 Wash. 60, 279 Pac. 123, and the other cases cited by the appellant, are clearly distinguishable. In the *Hurlbert* case, there was no circumstance evidencing an intent to sell, which is one of the elements necessary to be proven in a bootlegging charge. The trial court did not err in refusing to take the case from the jury.

It is next contended that the court erred in giving instruction No. 6. In this instruction, after defining what was meant by "carrying about" and telling the jury that that was an essential element of the crime of bootlegging, the instruction concluded with a statement to the effect that this element of the crime could be proven by circumstantial evidence, and that the jury had a right to infer the same from all the facts in the case. It is said that the instruction is bad because the court, in telling the jury that they had a right to infer that there had been carrying about from all the facts in the case, was commenting upon the evidence. But with this contention, we are unable to agree. If the jury did not have a right to infer from all the facts in

the case that there had been a carrying about, there was nothing to submit to them, and the court should have sustained the motion of the appellant made at the conclusion of the state's case. What is said in *State v. Peck*, 146 Wash. 101, 261 Pac. 779, to which attention has been called, is not out of harmony with the view here expressed.

█ It is next contended that the court erred in refusing to direct that certain of the jurors be required to come into court and there be interrogated as to what took place in the jury room during the time that the jury were deliberating. The appellant claimed misconduct on the part of the jury, and supported his motion for a new trial by affidavits of a number of the jurors. Certain of the jurors refused to make affidavits, and the attorney for the appellant presented an affidavit setting out what they would testify to if called into court. What is said in the affidavit of the attorney as to what the jurors who refused to make affidavit would testify, is substantially the same as what appears in the affidavits of the jurors filed. Assuming, without so deciding, that the trial court, in the exercise of its discretion in a proper case, may cause the jurors to come into court to be interrogated as to what took place in the jury room during their deliberations, there was no abuse of discretion in this case.

█ It is next contended that the bailiffs who attended the jury were not sworn. But little need be said upon this question. After the case had been called for trial and proceeded until the first recess of the court, there was administered to the bailiffs the usual oath when they take charge of a jury during its deliberations. The fact that this oath was administered during the trial and not at the conclusion thereof, and just before the jury retired to deliberate upon their verdict, furnishes no ground upon which to predicate error.

■ It is next contended that a new trial should be granted because the jury, during their deliberations, were guilty of misconduct. From the affidavits, it appears that, during the deliberations of the jury, statements were made by certain members thereof to the effect that the Figlenski family had a bad reputation, had been in the criminal courts frequently before, had previously been implicated in bootlegging, and one of the brothers of the appellant had served a term in the penitentiary. There was more to the same effect, but what has been referred to shows the general tenor of the affidavits.

The statements did not, as in the case of *State v. Parker,* 25 Wash. 405, 65 Pac. 776, which is one of the cases upon which the appellant relies, go to the effect of stating facts which did not appear in the evidence and on which the belief was asserted that the accused was guilty of the crime charged. Jurors possess at least average intelligence and integrity, and they are sworn to return a verdict in accordance with the law and the evidence.

In *State v. Pepoon,* 62 Wash. 635, 114 Pac. 449, it was said:

"In addition, we must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure."

In the case now before us, the claimed misconduct on the part of the jury is not such as to call for the disturbing of the verdict. While the case of *State v. Adamo,* 128 Wash. 419, 223 Pac. 9, is upon different facts, what is said in the opinion in that case lends persuasive support to the conclusion that we have here reached upon the question.

The appellant cites a number of cases from the state of Texas, but in that state there appears to be a statute which calls for the adoption of a different rule from that which has been consistently adhered to by this court.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, and MILLARD, JJ., concur.

PARKER, J. (concurring in the result)—I concur in the result. I think the instruction No. 6 comes so near being a comment on the evidence as to call for criticism.

[1]Reported in 13 P. (2d) 61.