[No. 35564.   *En Banc.*   March 15, 1962.]

MERLE VANNOY, *as Administrator, Respondent,* v. PACIFIC
POWER & LIGHT COMPANY *et al., Appellants.*\*

\* Reported in 369 P. (2d) 848.

*Brown, Hovis & Cockrill, Ted Roy, Smith, Gray, Hill & Rogers,* and *Joseph E. Hall,* for appellant Pacific Power & Light Company.

*Robinson, Morse, Landerholm & Memovich, John E. Morse, Duane Lansverk,* and *Dick & Dick,* for repondent.

DONWORTH, J.—This is an appeal from a judgment of the superior court for Klickitat County, entered January 5, 1960, upon a jury verdict rendered in favor of Merle Vannoy, as administrator of the estate of Walter Ziegele, against the Pacific Power & Light Company in a wrongful death action. For convenience, the power company will be called appellant, whereas the administrator of the estate

will be called respondent. The action arose out of the accidental death of Walter Ziegele at Bingen, Washington, on the morning of October 1, 1956.

The facts surrounding Ziegele's death are summarized as follows:

The decedent, a resident of Hood River, Oregon, was a self-employed furnace and chimney cleaner. On the day in question, he undertook the job of cleaning the chimney of the K & S Motors building in Bingen. (Originally, Messrs. Kari and Smith, who occupied the building as tenants, were joined as codefendants in this action. However, the action was dismissed as to them at the close of respondent's case. Pacific Power & Light Company, therefore, is the sole appellant.) The building involved is a one-story brick garage, the roof of which is about twenty feet high. Around the top of the building is a parapet, which is nine inches wide. The parapet stands about three and one half feet above the flat roof. The chimney, in turn, is located adjacent to the east wall of the building flush against the parapet and extends approximately one and one half feet above it.

In the moments prior to his death (shortly after nine o'clock a. m.), Ziegele placed a ladder against the east wall of the building and mounted the parapet. He carried with him a 19′ 6″ detachable aluminum pole frequently used by chimney sweeps in work of this nature. While standing a few feet away from the chimney, decedent raised the pole into the air, ostensibly to enable him to insert it into the chimney. As it was being held aloft, the pole came in contact with either the lethal arc of an overhead transmission line (this arc is estimated at twelve inches in diameter) or the line itself. As a result, Ziegele was apparently electrocuted. We use the word "apparently" because Dr. Henkle, who examined the corpse, signed a statement (which was admitted in evidence), concluding as follows:

" . . . It is totally impossible to state whether this man died from his contact with the transmission lines and the resulting electrical shock and burns or whether he

died from the traumatic results of the fall from the top of the building."

From the evidence, the jury might have logically found that death was due to the electric shock, or to the fall precipitated thereby, or both.

Certain additional facts should be noted regarding the transmission line itself. The line extended 39' 3" above the ground—roughly nineteen feet above the roof of the K & S building. The wire consisted of bare, uninsulated copper about one half inch in diameter and carried sixty-nine thousand volts of electricity. No warning signs or other protective devices were maintained by appellant with respect to the transmission line. Also, appellant admits that the wire in question angled over the K & S building in the vicinity of the chimney where decedent was working. The particular line was installed in its present location in 1951, and neither at that time nor at any time thereafter did appellant secure permission from the landowner (one A. M. Bolter) to maintain the line over any portion of the premises.

Appellant raises a total of twenty-five assignments of error. However, we feel that these can be condensed into roughly eight questions or issues.

■ First, did the trial court err in failing to hold the decedent contributorily negligent as a matter of law? Appellant contends that any reasonably prudent chimney cleaner, about to take a long metallic pole on top of a twenty-foot building, would check to ascertain the presence of electrical wiring located in proximity to his working area. We cannot agree. Appellant's contention is premised on the theory that the hazard involved was so open and obvious that a reasonably prudent man must have seen and appreciated it. Respondent, however, introduced evidence to the contrary, indicating that a layman unversed in the field of electricity would be hard put to distinguish the lethal, uninsulated wiring strung in the vicinity of the K & S building from harmless, insulated wiring. Respondent's evidence on this point, at the very least, suffices to create a jury question, and it is, therefore, not for the court

to say that decedent was guilty of contributory negligence as a matter of law. See *Ward v. Thompson,* 57 Wn. (2d) 655, 359 P. (2d) 143 (1961); *Farrow v. Ostrom,* 10 Wn. (2d) 666, 117 P. (2d) 963 (1941); *Hynek v. Seattle,* 7 Wn. (2d) 386, 111 P. (2d) 247 (1941).

Second, did the trial court err in withdrawing the defense of *volenti non fit injuria* from the jury's consideration? In our opinion, it did not. In *Anderson v. Rohde,* 46 Wn. (2d) 89, 278 P. (2d) 380 (1955), this court defined the maxim of *volenti non fit injuria* as the "knowledge and appreciation of the danger involved and a voluntary assent thereto." There is no evidence in the record before us which could be said to impute actual knowledge of the danger involved to the decedent. Appellant is contending that the decedent *should* have appreciated the dangerous condition—not that he, in fact, did appreciate it. The jury question concerning whether the decedent *should* have appreciated the danger involved is essentially one of contributory negligence and the maxim of *volenti non fit injuria* is inapplicable.

Third, did the trial court err in holding that rule 14 of RCW 19.29.010 applies to outside wiring? The rule reads as follows:

"All wires or appliances carrying a current of less than seventy-five hundred volts, inside of any building or vault, for the distribution of electrical energy, shall be sufficiently insulated, or so guarded, located, or arranged as to protect any person from injury. All wires or appliances carrying a current of over seventy-five hundred volts, shall be insulated, or so located or arranged, as to protect any person from injury; or shall be protected by a grounded metallic guard screen or other device equally as efficient, so arranged that no person may come within three times the arcing distance of the given voltage of such conductor or appliance as rated by the American Institute of Electrical Engineers for discharges between needle points; or by a guard rail or other device so arranged that no person may come within three feet of the same."

The trial court read the second sentence of rule 14 to the jury and went on to instruct the jury that a viola-

tion of this statutory rule, if it proximately caused the injury complained of, would constitute negligence as a matter of law. Clearly, the *first* sentence of rule 14 applies only to inside wiring "carrying a current of *less* than seventy-five hundred volts." But the *second* sentence of the rule applies to different wiring—wiring "carrying a current of *over* seventy-five hundred volts," and the words "inside of any building or vault" are omitted. Appellant seeks to have us read in the missing words. The words may have been omitted inadvertently, as appellant contends, but it is beyond the power and function of this court to read them in. See *In re Baker's Estate,* 49 Wn. (2d) 609, 304 P. (2d) 1051 (1956), and *McKay v. Department of Labor & Industries,* 180 Wash. 191, 39 P. (2d) 997, 97 A. L. R. 1489 (1934). The rule is neither vague nor ambiguous, nor irrational on its face. Had the legislature intended the second sentence of rule 14 to apply to inside wiring only, we presume that the rule would so state.

There are but two decisions[1] in the case law of this state which refer specifically to rule 14.[2] In *Clark v. Longview*

[1]There are eight other Washington cases cited in the briefs by the parties which concern high voltage wiring mishaps—five of the eight having been decided after the adoption of rule 14 of RCW 19.29.010 (Laws of 1913, chapter 130). However, in none of these latter five cases was the court's attention called to rule 14. See the following: *Graves v. Washington Water Power Co.,* 44 Wash. 675, 87 Pac. 956 (1906); *Mayhew v. Yakima Power Co.,* 72 Wash. 431, 130 Pac. 485 (1913); *Card v. Wenatchee Valley Gas & Electric Co.,* 77 Wash. 564, 137 Pac. 1047 (1914). The foregoing cases were all decided *before* Laws of 1913, chapter 130, became effective. The following cases were decided *after* Laws of 1913, chapter 130, became effective: *Sweeten v. Pacific Power & Light Co.,* 88 Wash. 679, 153 Pac. 1054 (1915); *Talkington v. Washington Water Power Co.,* 96 Wash. 386, 165 Pac. 87 (1917); *Scott v. Pacific Power & Light Co.,* 178 Wash. 647, 35 P. (2d) 749 (1934); *Kedziora v. Washington Water Power Co.,* 193 Wash. 51, 74 P. (2d) 898 (1937); *Heber v. Puget Sound Power & Light Co.,* 34 Wn. (2d) 231, 208 P. (2d) 886 (1949).

[2]In *Muck v. Snohomish Cy. P.U.D.,* 41 Wn. (2d) 81, 247 P. (2d) 233 (1952) (referred to by both parties), a regulation of the public service commission requiring a six-foot clearance of high-tension wires over houses was involved. This regulation had been promulgated in 1914 pursuant to Laws of 1913, chapter 130, which is another part of the same statute which contains rule 14. That case involved the electro-

*Public Ser. Co.*, 143 Wash. 319, 255 Pac. 380 (1927), a teen-aged girl was severely injured when her hair blew against a high voltage wire adjacent to a pump house and transformer maintained by the public service company. After discussing at length the duty of care owed by the company, the court added that:

" . . . this is independent of the fact that by express statutory provision . . . [referring to rule 14], it is made obligatory upon the appellant [company] to maintain certain safeguards around the wires and transformer."

Note, also, that the *Clark* case involved *outside wiring*.

The rule was again dealt with in *Deffland v. Spokane Portland Cement Co.*, 26 Wn. (2d) 891, 176 P. (2d) 311 (1947). That case arose out of the death of a thirteen-year-old boy who, with a companion, had climbed upon the roof of a cement plant and entered an open cupola in search of pigeons, when he came in contact with high voltage wires and was killed. The trial court had sustained a challenge to the sufficiency of the plaintiff's evidence and dismissed the case.

In affirming the dismissal, this court quoted rule 14. The discussion of the evidence in that case indicates that the court was concerned principally with the issue of contributory negligence. We think that the case is distinguishable from the present case because discussion of the issue of the defendant's negligence based on its alleged violation of rule 14 was not necessary, since the granting of the nonsuit was correct because of the decedent's contributory negli-

---

cution of Mr. Muck, who was assisting in the installation of a temporary antenna on a house. While momentarily holding a twenty-five foot pole consisting of five sections of steel tubing (as requested by the service man), the antenna came in contact with a twenty-four hundred volt line which had a clearance of less than six feet above the roof of the house.

This court did not consider whether the rule promulgated by the public service commission in 1914 was valid or applicable to the facts of the case, because all parties proceeded on the assumption that the rule was still in effect. Therefore, we do not regard that case as having a bearing on the applicability of rule 14 to the facts in the case at bar.

gence. Furthermore, the respective conduct and actions of the two decedents at the time of their deaths is materially different: the boy was at best a mere licensee on the company's property and had previously been chased out of its plant, while Ziegele was not on the company's property at all when he met his death. Also, in the *Deffland* case the wires were located inside the cupola and were accessible to the decedent only through a twenty-inch opening in the cupola which could be reached after a difficult climb up a steep roof. This court said:

" . . . In view of the location of these wires and the guardrails, we are of the opinion it cannot be said respondent was guilty of any negligence based upon a violation of the above statute."

■ Rule 14 imposes the highest standard of care on appellant. Absent a "metallic guard screen or other device equally as efficient," such wires shall be "insulated, or so located or arranged, as to protect *any person* from injury." (Italics ours.) However, as the *Deffland* case demonstrates, contact with the wires does not, in itself, show a violation of rule 14. In that case, the wires were so located as to "protect any person from injury," yet the boy surmounted the obstacles which were put in his way for his own protection, and came in contact with the wires. Power lines could be located 500 feet above ground, yet a parachutist or helicopter pilot might come in contact with them. This contact would not, in itself, establish negligence as a matter of law through a violation of rule 14. To "protect any person from injury" does not mean to make injury absolutely impossible. It does mean that the highest degree of care must be exercised in order to protect every foreseeable person from inadvertent contact with the wires. Furthermore, this rule holds power companies responsible for foreseeing risks which would be foreseen by the *most prudent* person.

The foregoing is consistent with the standard of care imposed by the common law, of which rule 14 is a codification. In *Scott v. Pacific Power & Light Co.*, 178 Wash.

647, 35 P. (2d) 749 (1934), this court quoted as follows from Croswell's Law of Electricity:

" ' . . . the amount of care necessary varies with the danger which is incurred by negligence, for a prudent and reasonable man increases his care with the increase of danger. If but little danger is incurred, as, for instance, when the wires carry only a harmless electric current, such, for instance, as the telegraph or telephone current, only ordinary care may be required. While if the wires carry a strong and dangerous current of electricity, so that negligence will be likely to result in serious accidents, and perhaps death, or if a harmless wire is in dangerous proximity to a high tension wire, a very high degree of care, indeed, the highest that human prudence is equal to, is necessary. This is particularly true of electric light and electric railway wires, which carry a high tension current often of great danger. . . . ' "

■ In *Bernard v. Portland Seattle Auto Freight*, 11 Wn. (2d) 17, 118 P. (2d) 167 (1941), this court stated that:

"We are committed to the rule that the violation of a statute intended and designed to prevent injury to persons or property constitutes negligence *per se* and, if it contribute proximately to injury, is actionable negligence. . . . "

See, also, *Cook v. Seidenverg*, 36 Wn. (2d) 256, 217 P. (2d) 799 (1950); *Currie v. Union Oil Co. of California*, 49 Wn. (2d) 898, 307 P. (2d) 1056 (1957); *White v. Peters*, 52 Wn. (2d) 824, 329 P. (2d) 471 (1958), and Restatement, Torts § 286.

To summarize the third issue in this case: (1) Rule 14 applies to outside wiring, (2) that rule codifies the common law in imposing the duty to exercise "the highest degree of care to which human prudence is equal," and (3) a violation of rule 14 constitutes negligence per se.

■ Fourth, should respondent's cause of action have been dismissed by the trial court because the mishap involved was one that could not have reasonably been anticipated by appellant—that Ziegele was an "unforeseeable plaintiff"? The answer is no, because the question of foreseeability is for the trier of fact. Furthermore, the question is relevant in determining whether the standard of care imposed by rule 14 has been met.

■ Fifth, did the trial court err in its instructions regarding the degree of care owed by appellant to the decedent? In instruction No. 14, the trial court told the jury that the power company must use "every reasonable means known, or which with reasonable inquiry would have been known" to prevent injury. By instruction No. 15, the trial court suggested that the power company owed the duty of "highest care that human prudence is equal to."

In view of the fact that the duty of care owed by appellant is the highest that can be imposed, short of insurer's liability, there could be no prejudice from these instructions. The duty imposed by the rule is so stringent that the instructions referred to above could not possibly enlarge the extent of appellant's duty of care. As these additional instructions did not increase the extent of appellant's duty as prescribed by statute, they must be treated as harmless to appellant. It is, therefore, unnecessary to decide whether either was inaccurate.

■ Sixth, did the trial court err in admitting evidence tending to prove that appellant never acquired an easement to angle its transmission line over portions of the K & S building? We feel that the trial court did err in this regard. The legal status of appellant vis-a-vis the property owner is germane to no issue in the case. The appropriateness of the location of the wiring is an issue separate and distinct from that of legal status. The location of the line is relevant; its legal status is not. It made not a particle of difference to the decedent whether or not the power company had procured an easement from the property owner to maintain the transmission line. The easement (or trespass) question was delved into by respondent at great length and the matter consumes many pages of the record. The only function which this evidence might have served would have been to prejudice the jury in evaluating appellant's case. The evidence invited the jury to attach special significance to a thoroughly irrelevant issue to the detriment of the power company. In *State v. Britton*, 27 Wn. (2d) 336, 178 P. (2d) 341 (1947), this court aptly defined

harmless error as "an error which is trivial, or formal, or merely academic . . . and in no way affected the final outcome of the case." We are not in a position to so classify the error described above and we, therefore, must deem it reversible.

Seventh, did the trial court err in instructing the jury that

" . . . a person is not contributorily negligent to forget about a particular hazard if his attention is diverted by a cause of such nature as would likely divert the attention of a reasonably prudent person under the circumstances"? (Instruction No. 10.)

▉▉▉ While on its face this instruction seems merely to be a restatement of the usual instruction—that one is not contributorily negligent if he acts as a reasonably prudent man under the circumstances—this instruction invited the jury to speculate with respect to facts not in evidence. No evidence was offered which would indicate that the decedent's attention was diverted by any one or any thing. To the contrary, respondent-plaintiff cogently argues that the transmission line did not appear dangerous and that there was no reason why a layman's attention would be fastened upon it in the first place.

In *Bickham v. Southern California Edison Co.*, 120 Cal. App. (2d) 815, 263 P. (2d) 32, a high voltage wiring case cited by respondent in support of the above instruction, the plaintiff testified that (1) he knew the wires carried high voltage, and (2) he momentarily forgot the fact due to preoccupation with his work. In the case before us, there is no evidence that decedent knew of the dangerous character of the wiring or that his attention was for any reason diverted. In the light of this fact pattern, we are of the opinion that the "temporary forgetfulness" instruction given by the trial court tended to confuse rather than clarify. Therefore, upon a new trial, we feel that it should be omitted.

Eighth, can the deposition of a witness, who resides outside of the county where the trial is held but who is present in court, be admitted into evidence for any purpose?

The depositions of six persons were admitted in behalf of respondent over objection. They are those of Messrs. Sampson, Childers, Jones, Millay, Morphey, and Aaron. Rule of Pleading, Practice and Procedure 26(d)(1), RCW Vol. 0, provides that:

"Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness."

Rule 26(d)(2) provides that:

"The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose."

Whereas, Rule 26(d)(3) provides that:

"The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: 1, that the witness is dead; or 2, that the witness resides out of the county and more than twenty miles from the place of trial, unless it appears that the absence of the witness was procured by the party offering the deposition; or 3, that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or 4, that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or 5, upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

None of the above-mentioned deponents ever took the witness stand at the trial. While they all resided out of the county, four of them were present in court and presumably could have been called as witnesses by either party to the action. Similarly, all of the deponents were in the employ of appellant company. Deponent Jones had died prior to the time of the trial, and therefore his deposition was admissible for any purpose under Rule 26(d)(3). However, as to those deponents present at the trial, we are of the opinion that Rule 26(d)(3) is inapplicable. As noted in 4 Moore's Federal Practice 1193, 1194, ¶ 26.30:

" . . . a party may prevent another party from using the deposition of a witness by procuring the attendance of the witness at the trial, in which case his testimony must be taken orally, if at all. . . ."

All the various subsections of Rule 26(d)(3) are predicated upon the unavailability of the particular deponent-witness. Where the deponent-witness is present in court, there seems no good reason for using the deposition for purposes other than those of impeachment or contradiction.

■■■ With respect to all of the deponents except the deceased Jones (whose deposition is clearly admissible in any event) and "high line patrolman" Sampson, respondent urges that their depositions were properly admitted as those of managing agents, as prescribed by Rule 26(d)(2). Broadly speaking, a managing agent of a corporation is

" . . . a person possessing and exercising the right of general control, authority, judgment, and discretion over the business or affairs of the corporation, either on an over-all or part basis, *i.e.*, everywhere or in a particular branch or district." *Carroll v. Wisconsin Power & Light Co.*, 273 Wis. 490, 79 N. W. (2d) 1, 71 A. L. R. (2d) 175 (1956).

See, also, 20 C. J. S. 206, 210, § 1942c; *Cohen v. American Window Glass Co.*, 41 F. Supp. 48 (1941), and *Freeman v. Keltner*, 175 Kan. 37, 259 P. (2d) 228 (1953).

Since this case is being remanded for a new trial for other reasons than the admission of these depositions, and since at the new trial they may or may not be again offered by respondent for the same purpose and under the same circumstances, we do not find it necessary to decide whether the trial court committed reversible error in admitting them.

If they are again offered, the court may pass upon the question of their admissibility in the light of the circumstances then existing and the views expressed above.

In view of the far-reaching significance this case may have for the power industry, particularly with respect to our interpretation of rule 14, *supra,* we take this opportunity to summarize our position. As we have said previ-

ously, under the statutory mandate of the legislature, power companies operating transmission lines outside of buildings (absent "a metallic guard screen or other device equally efficient") must insulate, locate, or arrange their high voltage wiring so as to protect *any* person from injury. Where a person is injured as the result of contact with such wiring, the trier of fact shall determine whether the power company has exercised the highest degree of care to which human prudence is equal. If not, the power company is negligent as a matter of law. Of course, the common law defenses of contributory negligence and proximate cause also remain available to the power companies.

For the reasons hereinbefore stated, the judgment of the trial court is reversed and the cause remanded for a new trial.

The allocation of costs between parties will abide the final determination of the cause. It is only after judgment is entered in the second trial that the "prevailing party" can be ascertained in accordance with Rule on Appeal 55(b)(1).

HILL, WEAVER, ROSELLINI, and OTT, JJ., concur.

HUNTER, J. (dissenting)—I dissent. The majority opinion states the court committed reversible error by admitting evidence tending to prove that the appellant Pacific Power & Light Company failed to acquire an easement to angle its transmission line over portions of the K & S building. I agree this constituted error, but I am convinced it does not justify a reversal.

In view of the record in this case, it was superfluous and harmless to the jury's consideration of the issue of the appellant power company's negligence in proximately causing the decedent's death. It is an obvious conclusion that the decedent's death was not effected by reason of the appellant having or not having an easement for the location of the power line. The jury was properly instructed on the issue of the appellant's duty to locate and properly safeguard a high voltage transmission line for the protection of the public from its lethal danger. There was no

inference in the court's instructions that this duty had any relation to obtaining an easement for its location. In fact, neither the word "trespass" nor "easement" is mentioned in the instructions.

We have said that the jurors are possessed with at least average intelligence and integrity, and they are sworn to return a verdict in accordance with law and the evidence. *State v. Figlenski,* 169 Wash. 38, 13 P. (2d) 5 (1932); *State v. Buttry,* 199 Wash. 228, 90 P. (2d) 1026 (1939); *Cf. State v. Moe,* 56 Wn. (2d) 111, 351 P. (2d) 120 (1960).

It is not reasonable for a person of average intelligence to conclude the decedent's death had any relation to the appellant's failure to obtain an easement. Therefore, the appellant could not have been prejudiced by the admission of the objectionable testimony.

This is a case where the record of negligence and proximate cause is so clear that the error committed by reason of the admission of improper evidence could not affect the result. The language of Judge Hill in his concurring opinion in the case of *Seattle-First Nat. Bank v. Rankin, ante* p. 288, 367 P. (2d) 835 (1962), is most appropriate:

" . . . I concur in the result of the majority opinion because the evidence of negligence and of proximate cause is so overwhelming that I cannot believe that the errors discussed in the dissent in any way affected the result."

I would affirm.

FINLEY, C. J., and FOSTER, J., concur with HUNTER, J.