[No. 37807.   Department One.   June 23, 1966.]

FRANCIS I. HORWATH, *Individually, as Executrix, and as Guardian, Appellant*, v. THE WASHINGTON WATER POWER COMPANY, *Respondent.**

*Jack Dibblee*, for appellant.

*Paine, Lowe, Coffin, Herman & O'Kelly*, by *Horton Herman* and *Lawrence R. Small*, for respondent.

LANGENBACH, J.†—This is a wrongful death action, brought by a widow for herself and for her minor children, to recover damages for the death of her husband and their father.

*Reported in 416 P.2d 92.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

On May 21, 1962, he was electrocuted. While he was painting a neon sign, he somehow came into contact with a power line, owned and maintained by defendant. The jury returned a general verdict for the defendant, and plaintiff has appealed.

The facts are not seriously disputed. In the spring of 1955, the Baldwin Neon Sign Company (hereinafter referred to as Baldwin) prepared to erect a neon sign upon a building in Spokane. The sign was about 6 feet wide, 29 feet high, and about 10 inches in thickness. It was to be erected 11 feet above the street so that the top would be 40 feet in the air. Adjacent to and beside the point of installation, the defendant (hereinafter referred to as the Power Company) had a high tension transmission line carrying 2,300 volts of electricity, being part of a three phase 4,000 volt feeder line. The wire was bare, uninsulated and about 1/10th of an inch in diameter.

Prior to completion of the sign, Baldwin had attached a bracket and an insulator pin, 14 inches high, on the outer edge of the sign. Baldwin's crew required the assistance of the Power Company's employees, as they believed the transmission line was too close to the building on which the sign was being installed. A conference was held between the city's chief electrical inspector, Baldwin and the Power Company. After the sign had been properly affixed to the building, the power line was fastened to the bracket and insulator.

As to placing the line in question on this 14-inch insulator pin attached to the sign, the chief electrical inspector testified, "At that time it was considered that a man painting the sign or servicing it would never get that high." His opinion was that such an installation was not a violation of the code applicable to this situation at that time.

On two occasions Baldwin had requested and received assistance relating to this wire from the Power Company.[1]

---

[1] These two occasions were: (1) at the time of installation; (2) in 1956, the Power Company insulated the 4,000 volt line by two rubber hoses and a pin shield on the insulator.

Before the accident, one of Baldwin's employees had twice painted this sign without incident. The safety regulations apparently required Baldwin to notify the Power Company whenever anyone was going to paint or service the sign.[2] After the accident, the Department of Labor and Industries issued a "Correction Notice" to Baldwin, but none was sent to the Power Company.

In April, 1962, the decedent, Mr. Horwath, was employed by Baldwin as a painter. On May 21, 1962, he and one Abitz,

---

[2]The parties considered that Baldwin had violated the following provisions of the Safety Standards for Construction Work of the State of Washington, issued by the Division of Safety of the Department of Labor and Industries, Part A, General Requirements:

§ A-31—*Working in the Proximity of Electrical Conductors*

It is the responsibility of those carrying on construction projects or performing any other work in close proximity to electrical conductors, to effectively guard their employees and the public against accidental contact with these lines, and also to eliminate the unnecessary interruptions and expense to the owners of electrical utilities and its customers. It is a requirement of those who do such work to make such provisions.

1. *General Provisions*

No person, firm, corporation, or agent of same, shall require or permit any employee to perform any function in proximity to electrical conductors or to engage in any excavation, construction, demolition, repair, or other operation, unless and until danger from accidental contact with said electrical conductors has been effectively guarded against in the manner hereinafter prescribed.

2. *Notification to the Electrical Utility or Owners and Responsibility of Safeguards*

When any operations are to be performed within 10 feet of any electrical conductors, the person or persons responsible for the work to be done shall notify in advance the owner of the electrical conductors of the work to be performed, and such person shall be responsible for the completion of the safety measures hereinafter stated before proceeding with any work which would impair the aforesaid clearances.

3. *Clearance or Safeguard Required*

Any operation is expressly prohibited if at any time during such operation, erection, etc., it is possible to bring material, equipment, or any part thereof or personnel within 10 feet of electrical conductors, except where such lines have been effectively guarded against danger from accidental contact by either:

1. The erection of mechanical barriers to prevent physical contact, or

2. The de-energizing of the electrical conductors and grounding when necessary.

a journeyman painter who was in charge of the task, were assigned to service or paint this particular sign. They were furnished with a ladder and a boatswain's chair apparatus with other tools to use in painting. Nothing, however, had been said to these men about any possible danger.

When decedent and Abitz arrived at the sign, they de-energized it by removing the fuse plugs to its interior mechanism. From the boatswain's chair and the ladder, they proceeded to paint the sign. They could not reach the upper corners of the sign in this manner. So the decedent went into the building and out on top of the sign; he was to finish the spots and corners left unpainted.

No one saw the decedent go on top of the sign. Abitz saw him after he was electrocuted; no one knows how this happened. Abitz testified that he and the decedent thought the bare wire was carrying an electric current, but they had not been warned by anyone at the Baldwin shop that there was a bare wire on the sign. Upon viewing the wire, he thought it might be hot, as it was not insulated. Decedent had said he was not going to touch it to find out. There were no warning signs of danger.

Baldwin was not a party to this action inasmuch as the deceased workman was covered with industrial insurance in an extrahazardous employment.

From the judgment for the Power Company, the appellant has five assignments of error. They will be set forth and considered seriatim:

1. The trial court erred in refusing to give her requested instruction No. 6, which reads:

> You are instructed that the law defines a wanton act as one which is performed intentionally with a reckless indifference to injurious consequences probable to result therefrom. Wantonness implies indifference as to whether an act will injure another.

> If you find that the Washington Water Power Company deliberately attached a high voltage conductor to the sign in question within 14″ of a place where they knew or should have known workmen other than electricians would be asked to work and that said conductor was maintained in said position over a period of years in utter disregard of

the consequences of its placement and maintenance in said position, then you must find that the defendant is guilty of wanton disregard or misconduct.

In support of this instruction, appellant cited *Adkisson v. Seattle*, 42 Wn.2d 676, 687, 258 P.2d 461 (1953), which set forth the definition of wanton misconduct as follows:

Wanton misconduct is not negligence, since it involves intent rather than inadvertence, and is positive rather than negative. It is the intentional doing of an act, or intentional failure to do an act, in reckless disregard of the consequences, and under such surrounding circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

*Accord, Bensen v. South Kitsap School Dist.*, 63 Wn.2d 192, 386 P.2d 137 (1963).

Appellant contended that the Power Company's maintenance of the high voltage line on a short staff of 14 inches for several years amounted to wanton misconduct. The *Adkisson* case, however, declared that wanton misconduct required an intent, *i.e.*, the circumstances and conditions must be such that a reasonable man would know that there is a high degree of probability of harm to another person.

Here the decedent's employer, the city's chief electrical inspector and the Power Company cooperated in the erection and manner of installation of this bracket for the support of the high tension line and they considered the wire to be safely installed. Another of Baldwin's employees had twice previously performed the same task of servicing this sign, as did the decedent, without coming into contact with this power wire. Moreover, the safety regulations, set forth in footnote 1, required Baldwin to notify the Power Company when the sign was to be painted. This allowed the Power Company to take the necessary steps, if any, for the safety of employees. Furthermore, whenever Baldwin or its employees requested any help, it was always furnished by the Power Company immediately.

The trial court properly ruled, as a matter of law, that

there was no evidence sufficient to warrant such an instruction.

2. The trial court erred in refusing to give appellant's proposed instruction No. 12, to which exception was taken. She stated this instruction would have advised the jury that:

It is sufficient to warrant a recovery by plaintiff if you find, by a fair preponderance of the evidence, that there has been established one or more acts of negligence, and that such act or acts of negligence was or were a proximate cause of the injuries and damages complained of.

Instead, the court gave instruction No. 7 (to which no exception was taken), the material parts of which are:

The mere fact, if it be a fact, that damages were sustained as alleged, does not of itself entitle recovery. Recovery of damages can only be had by proof of negligence which was the proximate cause of the injury or damage claimed. In other words, negligence cannot be presumed from the mere fact that an accident occurred, or from the mere fact that damages were suffered, but it must be found as a fact from the evidence introduced.

. . . .

"Proximate cause" is the moving or efficient cause which in its orderly sequence, unbroken by any intervening cause, produces injury or damage and without which injury or damage would not have occurred.

Appellant's argument was that this instruction limited the jury to only one proximate cause of the death of decedent. She contended that there might have been the possibility of two or more concurring proximate causes which may have contributed to the fatal accident. The case of *Russell v. Idaho Falls*, 78 Idaho 466, 305 P.2d 740 (1956), was cited in support of this position. That case is not apposite. It involved several defendants and several causes of action involving negligence. Here we have but one party and only one alleged claim of negligence.

Appellant's brief stated: "Any failure on the part of the Baldwin Company, to protect its employees, however, does not exonerate the respondent from negligence which contributed to the death of Mr. Horwath." However, the jury found no negligence on the part of the respondent.

Under this same claim of error was the assertion that respondent failed to exercise the standard of care required in the location and maintenance of this high voltage power line and this failure was a proximate cause of the death involved in this action. The cases of *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P.2d 749 (1934), and *Vannoy v. Pacific Power & Light Co.*, 59 Wn.2d 623, 369 P.2d 848 (1962), are cited in support of this position. The essence of the *Scott* case, as approved in the *Vannoy* case, appears in instruction No. 12 (to which no exception was taken). Accordingly, it became the law of the case at bar. It follows:

The care to be exercised by an electric company with respect to its wires is such as a reasonably careful and prudent person having in view the danger to be avoided and the likelihood of injury therefrom would exercise under the circumstances in order to prevent injury. An electric company that fails to use reasonable care in the construction and maintenance of its lines and apparatus, that is, such care as a reasonable man would use under the circumstances, is negligent and responsible for any condition falling short of this standard.

It follows from this rule that the amount of care necessary varies with the danger which is incurred, for a prudent and reasonable man increases his care with the increase of danger.

Inasmuch as the amount of caution used by the ordinarily prudent person varies in direct proportion to the danger known to be involved in his undertaking, it follows that in the exercise of ordinary care the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances. To put the matter in another way, the amount of caution required by the law increases, as does the danger that reasonably should be apprehended.

The vigilance and attention required must conform to the nature of the danger to which others may be exposed. If but little danger is incurred, as, for instance, when the wire carry only a harmless electric current such as a telegraph or telephone current, only ordinary care would be required; while if the wires carry a strong and dangerous current of electricity so that negligence will be likely to result in accident and perhaps death, a very high de-

gree of care—indeed, the highest care human prudence is equal to—is necessary.

■    This assignment and these arguments are not properly raised.  The exception to the court's failure to give her proposed instruction No. 12 was merely a paraphrasing of the instruction itself.  This was not sufficient to apprise the trial court of the questions involved.  See Rule of Pleading, Practice and Procedure 51.16W, RCW vol. 0; and *Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 215 P.2d 416 (1950).  Also, the appellant's failure to except to instruction No. 7 made it the law of the case.  *Wright v. Kennewick*, 62 Wn.2d 163, 381 P.2d 620 (1963).

Moreover, considering all of the instructions as a whole, the jury could not have misunderstood "proximate cause" in this case.  Instruction No. 11, in part, provided:

The issues to be determined by you in this case are these:

First, was the defendant negligent?  If you answer this in the affirmative, you have a further issue to determine, namely:

Was that negligence a proximate cause of any injury to the plaintiff?

If you answer that question in the negative, plaintiff is not entitled to recover, but if you answer it in the affirmative, you must then find on a further question:

Was the plaintiff's deceased husband negligent?

.   .   .   .

As indicated in this instruction, you should first determine the question of liability before you undertake to fix an amount that would compensate for damage, if any, found to have been suffered.

No exception was taken to this instruction which became the law of the case.

In addition, the court gave instruction No. 15, to which no exception was taken:

It is the duty of every person to exercise ordinary care for his own safety at all times and to avoid placing himself in danger.  In the exercise of that care a person shall make reasonable use of his senses.

The instructions as a whole advised the jury that it must find some act of negligence on the part of respondent and that such negligence was a proximate cause of the injury in question.

The action was based upon wanton misconduct (which the trial court ruled out as a matter of law) or negligence of respondent. The only claim of negligence was the manner in which this high tension line had been attached to this sign and its maintenance. There would be only one proximate cause so far as the Power Company was concerned. The only issues submitted to the jury were this alleged negligence of respondent and the contributory negligence of decedent. Any negligence of Baldwin in failing to notify either party cannot be imputed to either party. Neither can it be intermingled with the other issues, *viz.*, the alleged negligence of installation and maintenance of the wire as a *proximate cause* of the death and the claimed contributory negligence of decedent in touching the wire. For these reasons, this claim of error cannot be sustained.

3. The trial court erred in giving instruction No. 14, which was based upon the Safety Standards for Construction Work of the State of Washington, as follows:

> With regard to work being done in the vicinity of electrical conductors, the laws of the State of Washington provide:
>
> "Any operation is expressly prohibited if at any time during such operation, . . . it is possible to bring material, equipment, or any part thereof or personnel within 10 feet of electrical conductors, except where such lines have been effectively guarded against danger from accidental contact by either:
>
> "1. The erection of mechanical barriers to prevent physical contact, or
>
> "2. The de-energizing of the electrical conductors and grounding when necessary.
>
> "Only in the case of either exemption may the 10 foot clearance required be reduced. . . ."
>
> The violation, if you find there was such a violation, of the laws of the State of Washington applying to the work being done in the vicinity of electrical conductors, is negligence as a matter of law.

While the violation of such law is negligence, such negligence will not bar recovery on the part of a plaintiff, unless such violation proximately contributed to or proximately caused the fatal injury.

It is the duty of a workman, doing work in the vicinity of electrical conductors, to comply with the laws of the State of Washington relating thereto.

The appellant's exception stated:

Plaintiff further takes most vigorous exception, if the court please, to the court's instruction No. 14, which has dealt with the safety rule which is A-31, subsection 3, and it appears to limit—the instruction is limited to subsection 3, and to its exceptions, but it fails to go on and include subsection 6, and in subsection 6 an exception is made which would permit workmen or persons employed by others than an electrical utility from going within ten feet of the sign when they are working and maintaining—and the code or rule is maintaining—the supporting structures.

Later, appellant's counsel offered an addition to this instruction: "Our instruction would be that the jury is directed that the safety code of the state of Washington included in its safety code  . . . ." The court then asked: "You mean the section 6 you read, the one that excludes employees of the utility?" Counsel replied: "Yes." The court stated: "The motion will be denied."

The essence of subsection 6 is as follows:

These rules shall not be construed as applying to, shall not apply to, and are not intended to apply to the construction  . . .  and maintenance of overhead electrical lines  . . .  by authorized and qualified  . . .  employees of any  . . .  corporation, engaged in the construction  . . .  and maintenance, of overhead electrical circuits  . . . .

Thus, it very plainly appears that said subsection 6 has no possible application to the case at bar.

▬▬ The appellant argued that this instruction was erroneous; the safety standards are not the law of the state and the violation thereof is not negligence per se and they do not apply to employees. This argument is not within the scope of the exception set out above. The exception merely

proposed an addition to this instruction, not its deletion. In order to have preserved this claimed error, appellant must have brought the error to the attention of the trial court for correction. Otherwise the portion of the instruction to which no exception was taken became the law of the case. *Harrison v. A Bar A Ranch, Inc.*, 63 Wn.2d 592, 388 P.2d 531 (1964); and *Wright v. Kennewick, supra.* Moreover, this instruction was based upon testimony introduced by appellant. In the absence of a proper exception, this claim of error must be rejected.

4. Erroneous Ruling on Evidence. Carl Abitz, coworker with decedent and in charge at the time of the accident, was brought to the trial by respondent but testified at length for appellant. He said he considered decedent a careful painter; they had de-energized the sign mechanism. He figured all wires were hot; he looked this wire over and told decedent he thought it was hot. He wouldn't consider it safe to get near a wire thought to be hot; he told everyone he worked with to be careful. Decedent had said he was not going to touch wire to find out; decedent went on to the sign after he was told the wire was thought to be hot.

Referring to a talk Mr. Abitz had with a police officer:

Q. Shortly after the accident, the same day, you talked to some police official, did you not? A. Right, sir. Q. And you told him that, "I told Joe to be careful anyway." Do you remember stating that? A. No, but if I told him that, I said it. . . . . Q. Does that recall in your mind you may have told Sgt. Hendron that, "I told Joe to be careful anyway?" Would it be your testimony now you did so state that to Mr. Horwath? A. Well, I don't recall the exact—I don't recall it exactly in those words, but—. Q. Something to that effect? . . . A. Yes. Q. . . . [A]bout this wire that was up there . . . . A. Yes.

(All without objection.)

Later Mr. Abitz testified for respondent and said he had no independent recollection of having told decedent, "Joe, be careful." Lt. Hendron was then asked if Abitz had told him that he told decedent "Joe be careful." There was an objection—hearsay as to what Abitz told decedent; over-

ruled. Then Hendron said, "He stated that he told the victim to be careful anyway."

■ There was no motion to strike nor to instruct the jury to disregard this. Appellant argued this evidence by Hendron was inadmissible and highly prejudicial on the issue of contributory negligence. At most, it was cumulative. While testifying for appellant, the substance of the same statement had been made and admitted without objection. It has been summarized above. This assignment is without merit.

5. Failure of the court to grant a new trial. Since this was argued only with other assignments, it will not be considered further.

The allegations of negligence and contributory negligence were the only issues before the jury. When the jury returned the general verdict for respondent, the case was ended. Inasmuch as there was little dispute in the testimony and evidence and as to the law set forth in the instructions (to most of which no exceptions were taken), the verdict of the jury must stand.

The judgment is affirmed.

ROSELLINI, C. J., HILL, OTT, and HUNTER, JJ., concur.

_____

November 21, 1966. Petition for rehearing denied.