[No. 4209-0-III.   Division Three.   March 18, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD
E. CUMMINGS, *Appellant*.

*William D. McCool,* for appellant.

*Arthur R. Eggers, Prosecuting Attorney,* and *Donald W. Schacht, Deputy,* for respondent.

ROE, A.C.J.—Donald E. Cummings appeals from a conviction of second degree assault.

The principal issue is whether the trial court erred in denying Mr. Cummings' motion for a new trial because of alleged juror misconduct.

After the jury returned its verdict, Mr. Cummings' wife submitted an affidavit which stated, *inter alia,*[1] that during a recess on the first day of trial she saw a spectator talking with juror A and was able to hear their conversation. She said the spectator told the juror the defendant had beaten his wife, had gone to prison for it and that the spectator would not be surprised if defendant was guilty of the instant charge because he was "a con" and could be capable of anything. Mrs. Cummings further stated in the affidavit she had later talked with the spectator who did not deny his conversation with the juror. However, she said, he told her he would deny it in court and would not hesitate to fabricate a story to avoid any implication. An affidavit by a different juror indicated that before the first jury vote was

---

[1]The affidavits of the jurors provided significant information about their feelings and attitudes towards the deliberation process. To the extent they "inhere in the verdict", they should not be considered. *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 422 P.2d 515 (1967); *State v. McKenzie,* 56 Wn.2d 897, 355 P.2d 834 (1960); *State v. Parker,* 25 Wash. 405, 65 P. 776 (1901). As the court said in *Gardner v. Malone,* 60 Wn.2d 836, 841, 376 P.2d 651 (1962):

> In spite of this criticism, we believe a workable rule has evolved from our decisions. The crux of the problem is whether that to which the juror testifies (orally or by affidavit) in support of a motion for a new trial, inheres in the verdict. If it does, it may not be considered; if it does not, it may be considered by the court as outlined in *State v. Parker, supra.* One test is whether the facts alleged are linked to the juror's motive, intent, or belief, or describe their effect upon him; if so, the statements cannot be considered for they inhere in the verdict and impeach it. If they do not, it then becomes a matter of law for the trial court to decide the effect the proved misconduct could have had upon the jury. Another test is whether that to which the juror testifies can be rebutted by other testimony without probing a juror's mental processes. ⟩

taken he heard juror A and other jurors talk about Mr. Cummings being in and out of jail and having a record.

In a counteraffidavit juror A, with whom the alleged conversation took place, admitted speaking to an elderly gentleman outside the courtroom on the day in question but said the conversation only related to previous business dealings between them and that at no time did he discuss, with that spectator or any other persons or jurors, Mr. Cummings' previous record. That juror also said he did not recall any information concerning Mr. Cummings' prior record having been discussed by any jurors during deliberation. Two other jurors who submitted affidavits said they did not recall during the deliberation any discussion of Mr. Cummings' criminal record and that they had no knowledge of any communication by jurors outside the courtroom.

There is nothing in the verbatim report of proceedings of the trial concerning Mr. Cummings' prior record[2] except his answer on direct examination to a question concerning provocation by his victim. His lawyer asked, "Prior to swinging the bat at you, did Lupe call you any names or threaten any harm to you?" Mr. Cummings answered, "Yes, Sir. He screamed at me and called me names, called me a white bastard and white trash and jailbird and everything else."

Without conducting a hearing, the trial court read the affidavits in a light most favorable to Mr. Cummings (assuming all the facts in the affidavits were true) and denied the motion for a new trial. Thus, the court concluded that the alleged conversation and consideration of Mr. Cummings' prior record could not constitute juror misconduct as a matter of law. This was error.

■ Initially, we note each case of juror misconduct is decided on its own facts. *Sun Life Assurance Co. of Can-*

---

[2]The presentence investigation reveals Mr. Cummings had one felony conviction as a juvenile and three as an adult. The report also indicates other extensive contact with local authorities over minor matters and more than 20 police responses to domestic disturbances at the Cummings household over an 8–year period.

*ada v. Cushman,* 22 Wn.2d 930, 158 P.2d 101 (1945). Furthermore, we will not reverse a trial court's discretionary ruling regarding a new trial unless there is a showing of abuse of that discretion. *State v. Crowell,* 92 Wn.2d 143, 594 P.2d 905 (1979). However, as the court said in *Crowell,* a much stronger showing of abuse ordinarily is required to set aside an order granting a new trial than where the trial court has denied the request. We also recognize that the question of what conduct amounts to cause for a new trial has created significant concern in this State's appellate cases. *See Gardner v. Malone,* 60 Wn.2d 836, 376 P.2d 651 (1962), and the cases therein.

▮ Where the question concerns consideration by the jury of matters not properly admitted into evidence, a new trial should be granted when there is reasonable ground to believe the defendant may have been prejudiced. *State v. Rinkes,* 70 Wn.2d 854, 425 P.2d 658 (1967) (consideration of cartoon and editorial improperly sent to jury room); *State v. Smith,* 55 Wn.2d 482, 348 P.2d 417 (1960) (unproven aliases on cover sheet to instructions submitted to jury); *State v. McChesney,* 114 Wash. 113, 194 P. 551 (1921) (juror's personal experience with cattle theft considered); *State v. Parker,* 25 Wash. 405, 65 P. 776 (1901) (juror told others he knew the defendant was a member of a "gang of toughs" and had been implicated in a murder). As the court said in *State v. Lemieux,* 75 Wn.2d 89, 448 P.2d 943 (1968), something more than a possibility of prejudice must be shown. However, once misconduct has been shown and there is a reasonable doubt as to its effect, the doubt must be resolved against the verdict. *See Gardner v. Malone, supra; Lyberg v. Holz,* 145 Wash. 316, 259 P. 1087 (1927).

Assuming the matters in the defendant's wife's affidavit are true, which we must as there was no fact–finding hearing, we are faced with members of the jury discussing Mr. Cummings' criminal record and jail experiences when nothing concerning either has been admitted into evidence. Because consideration of such matters would associate Mr.

Cummings with the "criminal class", *see State v. Smith, supra* at 484, we cannot assume the jury was unaffected by such a discussion. The doubt must be, in the absence of findings to the contrary, resolved in Mr. Cummings' favor.

The State's reliance on *State v. Figlenski,* 169 Wash. 38, 13 P.2d 5 (1932), is misplaced. Although the jury there considered statements about the character of the Figlenski family, their court involvement and that one member of the family was a "con", the court did not consider such conduct grounds for a new trial. It noted at page 43 that the discussion "did not . . . go to the effect of stating facts which did not appear in the evidence . . ."

Nor do we find *State v. Druxinman,* 34 Wash. 257, 75 P. 814 (1904), persuasive. There, after selection of the jury foreman, one of the jurors told the others he remembered that the defendant had been previously charged with similar offenses. The court did not consider the juror's actions sufficient misconduct to grant a new trial because there was no showing it had an influence upon the verdict and the previous charges might have been matters of common knowledge. *Druxinman* appears to have ignored *State v. Parker, supra,* decided just 3 years earlier, which would not have allowed consideration of the influence of the information on the verdict. Furthermore, *Druxinman* has not been subsequently cited for that proposition while virtually all of the State's juror misconduct cases have been founded upon *Parker.*

■ Despite the court's erroneous legal conclusion, we need not reverse the denial of the motion for a new trial. Instead, we remand the matter for a hearing to determine whether *in fact* the juror misconduct has occurred. We recognize the decision to conduct such a hearing is one within the discretion of the trial court. *State v. Hawkins,* 72 Wn.2d 565, 434 P.2d 584 (1967). However, such an inquiry has been commended. *O'Brien v. Seattle,* 52 Wn.2d 543, 327 P.2d 433 (1958). This is especially true because here misconduct is a factual question, *State v. Young,* 89 Wn.2d 613, 630, 574 P.2d 1171, *cert. denied,* 439 U.S. 870, 58 L.

Ed. 2d 182, 99 S. Ct. 200 (1978), and the problem of juror credibility has previously been noted. *See Halverson v. Anderson,* 82 Wn.2d 746, 752, 513 P.2d 827 (1973). Where, as here, affidavits establish a question of fact about juror deliberations not inhering in the verdict, a fact–finding hearing should be held to resolve the issue. Otherwise, appellate courts may order that such a determination be made. *See Remmer v. United States,* 347 U.S. 227, 98 L. Ed. 654, 74 S. Ct. 450 (1954).

This case is remanded to the Superior Court for a hearing to determine whether in fact jurors engaged in misconduct requiring a new trial for Mr. Cummings.[3]

GREEN and MUNSON, JJ., concur.

---

[3]Mr. Cummings also challenges the sufficiency of the State's evidence. Having read the record in view of the standard established by *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980), we find a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.